249 S.C. 627 (1967)
155 S.E.2d 902
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,
v.
Melvin H. AUSBORN, Edith L. Hughey, Norman V. Hughey, and Mary Carole Hughey, of whom Melvin H. Ausborn is, Respondent.
18675
Supreme Court of South Carolina.
July 6, 1967.
*628 *629 *630 *631 Messrs. Love, Thornton, Arnold & Thomason and W. H. Arnold and John G. Cheros, all of Greenville, for Appellant.
Messrs. Wyche, Burgess, Freeman & Parham, of Greenville, for Respondent.
*632 Messrs. Love, Thornton, Arnold & Thomason and W. H. Arnold and John G. Cheros, all of Greenville, for Appellant, in Reply.
July 6, 1967.
MOSS, Chief Justice.
This action is one under the "Uniform Declaratory Judgments Act", Section 10-2001 et seq., 1962 Code of Laws. It is brought by Southern Farm Bureau Casualty Insurance Company, the appellant herein, for a determination of its liability, if any, arising under an automobile liability insurance binder issued by it, on February 7, 1965, to Melvin H. Ausborn, the respondent herein.
The appellant, in substance, alleged that it was entitled to deny any coverage to the respondent for an automobile accident occurring on March 10, 1965, resulting in suits for damages against him by Edith L. Hughey, Norman V. Hughey and Mary Carole Hughey, because of certain untrue and false statements made by Ausborn in his written application, dated February 7, 1965, for automobile liability insurance.
Ausborn contends that the appellant was bound to afford him coverage on account of the automobile liability insurance binder which became effective February 7, 1965, that he paid the premium on said policy for coverage for the period commencing on said date and ending on March 10, 1965, and that by accepting and retaining the premium, assumed *633 responsibility under its coverage for the injuries to the Hugheys, and that by its acts and conduct waived any right it had to deny coverage.
This case came on for trial before the Honorable James H. Price, Jr., County Judge, without a jury. The testimony was taken and the trial judge, by his order of May 24, 1966, dismissed the complaint and held that the appellant was bound under the aforesaid binder to afford liability coverage through March 10, 1965, within the limits specified in the application. The appellant prosecutes an appeal to this court from said order.
This action was tried by the judge, without a jury, and the findings of fact made by him have the same force and effect as the verdict of a jury, unless he committed some error of law leading to an erroneous conclusion, or the evidence is reasonably susceptible of the opposite conclusion only. Crook v. State Farm Mut. Automobile Ins. Co., 235 S.C. 452, 112 S.E. (2d) 241. Bankers Ins. Co. of Pa. v. Griffin, 244 S.C. 552, 137 S.E. (2d) 785. We consider the exceptions in the light of this rule.
The respondent, on January 27, 1965, purchased a new Ford automobile from Ford-Horne, an automobile dealer located in Greenville, South Carolina, paying a part of the purchase price in cash and financing the unpaid portion with a credit company, with liability insurance on said automobile with a company other than the appellant. The liability policy obtained by the respondent at the time of the purchase of the automobile was cancelled on or about February 7, 1965, and he was notified by Ford-Horne to bring the automobile back to its place of business and to arrange for another liability policy. The respondent was not successful in his efforts to secure a policy. Thereafter, a representative of Ford-Horne called one McNair, an agent for the appellant, and he received an application for liability insurance from the respondent and based thereon issued a binder.
*634 The application for liability insurance was filled out by McNair and signed by the respondent. Among the questions asked on the application and the answers given were the following:
"Q. Has any driver been arrested or convicted of any traffic violation during the past 3 years?
"A. No.
"Q. Has operator's license for any driver ever been suspended or revoked?
"A. No.
"Q. Has insurance for any driver ever been cancelled, declined or refused?
"A. No."
Admittedly, the foregoing answers given by the respondent to the questions asked in the application were false and untrue.
The evidence shows, according to the South Carolina State Highway Department records, that the respondent was charged with and convicted of speeding on May 20, 1963, again on June 16, 1963, with reckless driving on August 22, 1963, for which his driver's license was suspended for four months, beginning November 22, 1963, again for speeding on September 24, 1963, again on September 7, 1964, and was charged with failing to yield right of way on September 8, 1964, at which time his driver's license was suspended for two months, beginning October 13, 1964, and again with speeding on October 21, 1964. The record also shows that the respondent's license to drive a motor vehicle was suspended on December 17, 1964, because of the cancellation of his insurance under the Safety Responsibility Act. Additionally the records from the Greenville Police Department, pertaining to the respondent, show that on June 30, 1963, and on October 21, 1964, he paid fines for driving too fast for conditions.
The respondent testified that he informed McNair of his arrest, conviction and suspension of driving license for the *635 violation which occurred on August 22, 1963. He does not testify that he informed McNair of the other charges and convictions enumerated above. When asked why he answered the question on the application relating to prior arrests or convictions and license suspension "No" in view of his contention that he had informed McNair of his previous arrest, conviction and license suspension in August, 1963, the respondent answered:
"A. It said within the past three years and it had been three years since I had had that wreck and been convicted.
"Q. Well, `63 wasn't three years from '65, was it?
"A. `63, `64 and `65.
"Q. You thought it had been three years?
"A. Right."
The trial judge held that a conviction, in its legal sense, means a final judgment conclusively establishing guilt. He further stated that in this technical sense the respondent was convicted only of the reckless driving offense, even though he found that Ausborn had been given at least six tickets for moving violations, excluding the reckless driving conviction, and had forfeited bonds thereon. He further held that under a liberal construction of the word "conviction" the respondent was aware of the fact that he should have answered the question on the application differently. Ausborn contended that the question on the application was directed to the three years before the date thereof and since it was propounded to him in 1965 and the violation occurred in 1963, that such constituted a lapse of three years. The trial judge held that such might have been justified in the mind of Ausborn but such was not, in fact, a justifiable reason for the answer given in the application.
It was a disputed question of fact as to whether the respondent told McNair of his arrest and conviction for reckless driving on August 22, 1963. The trial judge has found that the respondent did inform McNair of such and the knowledge of McNair acquired within the scope of his agency is imputable to the appellant, and, if the *636 appellant, at the inception of the contract, had knowledge of facts which render the policy void at its option, and the company delivers the binder as a valid one, it is estopped to assert such ground as a forfeiture. Mickle v. Dixie Security Life Ins. Co., 216 S.C. 168, 57 S.E. (2d) 73. It follows that the answer "No" in the application for the liability insurance, even though as recorded was false and untrue, would not permit the appellant to rescind the policy on the basis of the arrest and conviction of reckless driving on August 22, 1963. However, the respondent had other traffic violations of which McNair had no knowledge and the rule just quoted would not be applicable thereto.
The trial judge obviously concluded that since the other traffic violations of the respondent did not result in a "conviction" as that word was construed by him, a false and untrue answer to the question in the application would not be a false representation. In so holding, we think the trial judge committed error of law which led him to an erroneous conclusion.
Under the provisions of Title 46, Chapter 7, Uniform Act Regulating Traffic, it is unlawful for any person to drive a motor vehicle in a reckless manner, Section 46-342; and it is unlawful for any person operating a motor vehicle to fail to yield the right of way in accordance with Sections 46-421 to 46-425, inclusive; and it is unlawful to violate speed restrictions contained in Sections 46-361 to 46-372. Section 46-346, Chapter 7, provides that an entry of a plea of guilty, the forfeiture of any bail or the entry of a plea of nolo contendere for violation of the foregoing provisions shall have the same effect as a conviction after trial.
Under the point system for evaluating operating records of drivers as such is contained in Title 46, Chapter 6, the term "conviction" includes the entry of any plea of guilty or plea of nolo contendere, and the forfeiture of bail or collateral deposited to secure a defendant's appearance in court. Likewise, under the "Motor Vehicle *637 Safety Responsibility Act", Section 46-702(1), it is said that a "conviction" includes the entry of any plea of guilty, of nolo contendere, and the forfeiture of any bail or collateral deposited to secure a defendant's appearance in court. It thus appears that the forfeiture of bond or the payment of fines by the respondent amounted to "convictions" under the foregoing sections of the Code. Admittedly, the respondent had at least six moving traffic violations and either paid a fine or forfeited a bond for each violation. Such constituted "convictions" and were not revealed to the appellant on the application made for liability insurance. To this extent the answer given was false and untrue.
Representations in an application for a policy of liability insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries, and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. Inter-Ocean Ins. Co. v. Harkrader, 193 Va. 96, 67 S.E. (2d) 894. Where a fact is specifically inquired about, or a question so framed as to elicit a desired fact, a full disclosure must be made, and the insurer has the right to rely upon the answer. An applicant is required to make full answers without evasion, suppression, misrepresentation or concealment of material facts so that such statements will represent his knowledge of the hazards of loss. Appleman, Insurance Law and Practice, Vol. 12, section 7292, page 392. If an applicant undertakes to state the circumstances which can affect the risk, he must do so fully and faithfully. Stoney v. Union Ins. Co., 3 McCord 387.
It was incumbent upon the appellant to show not only that the statements made by the respondent in his application were untrue but, in addition that their falsity was known to the applicant, that they were material to the risk, and relied on by the insured, and that they were made with the intent to mislead and defraud the insurer. *638 Graham v. Aetna Ins. Co., 243 S.C. 108, 132 S.E. (2d) 273, 100 A.L.R. (2d) 1352.
The facts here clearly show that the respondent knew of all of his traffic violations. The statement made in the application signed by the respondent that he had not been convicted of any traffic violation during the past three years was false and untrue. However, respondent testified that he revealed one of the convictions to McNair. The falsity of his answer in the application as to the other violations is readily apparent. A representation is material when the insured knows or has reason to believe that it will likely affect the decision of the insurance company as to the making of the contract of insurance or as to its terms. It is clear from the record that the representations made by the respondent were material and a policy of insurance would not have been issued had the true facts been known to the appellant.
The trial judge found that McNair either had knowledge or should have had knowledge of Ausborn's driving record for the following reasons:
"(a) Failure to inspect or examine the car being purchased by a 21-year old, single man was either a deliberate or a negligent act on the part of McNair.

* * *
"(b) The application states that McNair had known Ausborn for six months whereas, in fact, he had seen him on two occasions at Ford-Horne;
"(c) The application shows that the car was acquired in January by Ausborn with the application for insurance being taken on February 7. I am satisfied, and so find, that McNair knew a liability policy had been cancelled, notwithstanding the fact that the application asked such a question and contains an answer of `No'. Any pursuit of this information would necessarily reveal all of Ausborn's record;
"(d) Even at the time of trial, allowing for the passage of fourteen and a half months, the appearance of Ausborn *639 considered in the light of such facts as were known, or knowledge charged to McNair thereof, was an additional factor. * * * His appearance and demeanor should have been sufficient to require an independent investigation by McNair; and
"(e) * * * Ausborn's answer of being convicted of reckless driving in Pickens with the four months' suspension of his license charged McNair with notice of further violations."
We do not think that the failure of McNair to inspect or examine the ear being purchased by Ausborn, who was a single man twenty-one years of age, was such an act that would impute knowledge to McNair of Ausborn's driving record, and the trial judge was in error in so holding. We have been cited to no authorities either in the order of the trial judge or in the briefs of counsel, that will sustain the ruling of the trial judge. The case of Mayflower Ins. Exchange v. Gilmont, 9 Cir., 280 F. (2d) 13, 89 A.L.R. (2d) 1019, was a declaratory action by an insurer to have determined its rights and obligations under a liability policy where the insured gave false answers to the questions on the application blank. It appears that the writing agent stated in the application that he had examined the car of the insured when, in fact, he had not. The jury was instructed that if the agent was negligent in filling out the application for insurance then the insurer would not be entitled to be relieved of its obligation under the policy. The court, in reversing such an instruction, held that the failure of the agent to examine or inspect the automobile of the insured did not in any way affect that which actually was done.
The misstatement of McNair that he had known Ausborn for six months, when, in fact, he had only seen him on two occasions at Ford-Horne, could not charge him with knowledge of Ausborn's driving record.
The finding of the trial judge that McNair knew a liability policy of Ausborn's had been cancelled is wholly unsupported by any evidence in the record. *640 Such a finding was erroneous. Ausborn falsely represented in his application that his liability insurance had never been cancelled nor had any application therefor been declined or refused.
The holding of the trial judge that the appearance of Ausborn at the time of the trial, considered in the light of such facts as were known, charged McNair with knowledge of Ausborn's driving record is erroneous. There is no evidence in the record as to what Ausborn's appearance or demeanor were at the time McNair took an application from him for the insurance here involved. The effect of a trial judge's observation of a party's manner and demeanor in the courtroom should be limited to its bearing on the credibility to be accorded to the party's testimony. Dworkis v. Dworkis, Fla. App., 111 So. (2d) 70, 72 A.L. R. (2d) 1189. If the appearance and demeanor of Ausborn were sufficient to put McNair on notice of the falsity of the answers given by Ausborn and such were apparent from his appearance as a witness, it seems to us that the trial judge would not have put the stamp of verity upon his testimony. The inconsistency of such holding is readily apparent.
The trial judge, in finding that Ausborn's answer to McNair that he had been convicted of reckless drivin the fall of 1963, for which his driver's license was revoked for four months, charged McNair with notice of further violations of Ausborn, took "judicial notice of Section 46-342, 1962 Code of Laws, and the fact that it provided for a revocation or suspension of a driver's license only for a second offense and then for three months." We think the trial judge erroneously applied Section 46-342 of the Code. What ever notice McNair received by being informed of a four months license suspension, as a result of a reckless driving conviction, would be notice only of convictions prior to the conviction for which the license was suspended and would not be notice of any conviction occurring subsequent to the suspension. The respondent testified that McNair asked him individual questions on the application *641 as he filled it out. It was the duty of Ausborn when he was asked if he had been convicted of any traffic violations to make a full and true disclosure not only of the reckless driving conviction but of all traffic violations and convictions. Ausborn failed to do this and thereby concealed all of his violations and convictions except the one reckless driving conviction.
The record shows that after the liability insurance policy obtained by the respondent at the time of the purchase of his automobile was cancelled he attempted to obtain insurance from other companies and, in making such applications he revealed his driving violations and because of such was refused insurance. It thus appears that Ausborn was fully conscious of the result flowing from his full disclosure of his driving violations. The intent with which misrepresentations of facts are made, in an application for automobile liability insurance, may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations. Here it is reasonable to conclude that Ausborn was fully aware that if he made a full disclosure to the appellant of his driving violations, as he should have done, the result would have been the same as was accorded him by other companies. Ausborn offers no explanation or reason for his failure to disclose to McNair that his liability insurance had been cancelled and that other companies had declined or refused to insure him, nor does he offer any reason for his failure to make a true and full disclosure of all of his driving violations.
The false statement of Ausborn in his application to the appellant for an automobile liability policy that he had never had a liability policy cancelled, declined or refused was a material misrepresentation which was sufficient to warrant the recision of the binder by the appellant. State Farm Mut. Auto. Ins. Co. v. Anderson, 107 Ga. App. 348, 130 S.E. (2d) 144. The same rule is applicable to a false statement concerning his traffic violations. *642 Under the facts of this case we do not see how any reasonable inference as to Ausborn's intent in making his answers to the questions under consideration could be drawn other than that he deliberately intended to deceive the company and thereby procure the insurance.
It is our conclusion, for the reasons hereinbefore stated, that the appellant, under the binder issued by it on February 7, 1965, never afforded any coverage to the respondent unless it has waived its right to assert a denial of coverage because of the untrue and false statements made by Ausborn in his written application for liability insurance.
This court has defined waiver as being the intentional relinquishment of a known right. Brown v. State Farm Mut. Auto. Liability Ins. Co., 233 S.C. 376, 104 S.E. (2d) 673. It was incumbent upon the respondent here to show a waiver by a preponderance of the evidence. Camden Wholesale Grocery v. National Fire Ins. Co., 106 S.C. 467, 91 S.E. 732, 733. In order for a waiver to be effective it must be made with full knowledge of the right which is to be waived.
The record shows that on March 10, 1965, Ausborn was involved in an automobile collision with a car owned by Hughey and occupied by his wife and daughter, both of whom received injuries. The appellant was notified of such collision and on March 11, 1965 commenced an investigation, taking a statement from Ausborn as to the facts of the accident. No inquiry was made about his driving record. The investigator examined the car in question and concluded from the equipment he found thereon that such indicated that Ausborn was "at least a speedy driver". This information was transmitted to one Stewart, Claims Manager of the appellant located in Columbia, and it was suggested that the company terminate Ausborn's liability policy.
It appears from the record that on March 12, 1965, Robert L. Shealey, employed in the underwriting department of the appellant, wrote Ausborn the following letter:
*643 "Attached is your check in the amount of $84.75. This amount was sent with your application for insurance on a 1965 Ford.
"We are sorry to advise that this application does not meet our underwriting rules and we will be unable to issue a policy. We will however consider working the recent claim which occurred while this unit was being operated by you, if you will forward the outstanding premium in the amount of $13.14. This would be for the policy period 2-7-65 the date of the application through March 10, 1965, the date the accident occurred. This premium will have to be received in our office before we can consider working the claim."
The trial judge found that the report made by the investigator to Stewart had been communicated to Shealey before the aforesaid letter was written. He further found that the appellant was not relying on the statements contained in the application made by Ausborn when the aforesaid letter was written. There is absolutely no testimony in the record to warrant this conclusion. As a matter of fact the testimony shows, without contradiction, that when the aforesaid letter was written Shealey did not know anything about respondent's driving record. Shealey explained that the respondent did not meet the underwriting rule of the appellant for the reason that he was under twenty-five years of age and single and his company did not accept the risk for such a person unless there was other coverage in the family.
The above quoted letter indicated appellant's willingness to provide coverage based on a lack of knowledge that respondent had misrepresented his driving record. In order for the foregoing letter to be considered a waiver it must have been written with a knowledge of the misrepresentations contained in the application of the respondent for liability insurance. The aforesaid letter could not be construed as a waiver in the absence of a showing that Shealey had knowledge of the falsity of the representations contained in the application for the insurance policy.
*644 The respondent attaches significance to a memorandum from Shealey to the adjuster stating that the appellant had rejected Ausborn's policy. It appears that Shealey had been informed by Stewart that the respondent was an undesirable risk when he wrote the aforesaid memorandum on April 8, 1965. The undesirability as a risk was bottomed on a conclusion derived from the adjuster's report of his examination of Ausborn's car that he was a "speedy driver" rather than the fact that he had made false representations in his application for insurance.
Ausborn testified that he paid the amount of $13.14 referred to the letter of March 12, by delivering such amount in cash to "one of the girls in (appellant's) office" in Greenville, in March or April, 1965, and was given a receipt therefor upon which was printed the words "Southern Farm Bureau", and that such receipt was lost prior to the trial of the instant case. Mrs. Martha Boone, a witness for the appellant, testified that she was employed in appellant's office in Greenville and had the duty of receiving premium payments. She further testified that she recalled receiving a telephone call from Ausborn requesting directions for reaching appellant's office for the purpose, as expressed by Ausborn during the conversation, of paying the $13.14. However, she testified that Ausborn did not come to the office as expected and at no time paid any money to her or to anyone else in the office. The appellant's duplicate receipt book covering the period in question was admitted into evidence and such contained no record of any receipt having been issued to Ausborn. The trial judge found that the premium of $13.14 had been paid and appellant's acceptance thereof constituted a waiver of its rights. He did not hold that the failure of the appellant to return or tender a return of this premium constituted a waiver. Although we are bound by the aforesaid finding of fact, an acceptance by the appellant of the premium would have no more effect than the letter upon which such premium payment was based, since any acceptance of the premium did not occur at a time *645 when the appellant had knowledge of the falsity of the representations contained in the application of Ausborn.
The trial judge, upon the assumption that the aforesaid premium had not been paid, found that the appellant had waived its rights and was estopped to avoid coverage, on the ground of Ausborn's false representations, "through its continuing investigation, communications with the Hugheys and the securing of extensions of time in which to plead; * * * counsel for the Hugheys would have filed a summons and complaint at an earlier date and * * * the trials would have been completed had it not been for the actions of Southern Farm."
Norman V. Hughey, Jr. testified that the appellant's adjuster talked to him only one time, being within three days after the accident, and stated to him that he "had nothing to worry about * * * they would take care of all medical bills, all expenses * * * that (Ausborn) was fully covered." Hughey's attorney testified that the adjuster discussed the accident with him several times "immediately after this collision" and told him that upon receiving the medical bills the case would be settled. No settlement came and in June this attorney prepared a complaint in behalf of Hughey. Upon giving the adjuster a copy of the complaint for his information he was given by the adjuster the name of counsel who would defend the action "if it had to go that far but that he would appreciate it if I would grant * * * an extension of time"; the extension was granted. During December, 1965, the tort cases were set for trial at the January, 1966, term of court. Hughey's attorney further testified that at the bar meeting setting cases for trial he was told by the attorney defending the tort action "I want you to come to my office and we'll settle these cases." Thereafter, on December 30, the attorney for Hughey was informed by defense counsel in the tort actions that coverage of Ausborn was to be denied. Hughey's attorney testified that such was the first indication to him that the appellant intended to avoid coverage under the binder.
*646 The adjuster who had the foregoing dealings with Hughey and his attorney was the same adjuster who initially investigated the accident of March 10, 1965, and interviewed Ausborn on March 11, 1965. This adjuster was the only one having contact with Ausborn, the Hugheys and the Hughey's attorney. After March 11, 1965, he had no further contact with Ausborn until July 12, 1965, when he advised him by letter that counsel for the Hughey family intended to commence an action arising from the accident and requesting that he contact appellant's office immediately upon receipt of such summons and complaint. The adjuster received no response from Ausborn and did not see him until November 22, 1965, at a garage in Columbia, when the adjuster inquired about the suit papers. At that time Ausborn agreed to go to Greenville on November 26, 1965, and to take the suit papers with him. Ausborn went to Greenville but did not take the suit papers with him. The adjuster testified that on the aforesaid date Ausborn voluntarily stated that he had a record for traffic violations and this was the first he knew of it. Ausborn returned to Columbia and delivered the suit papers to a representative of State Farm Mutual Automobile Liability Insurance Company. Ausborn was asked why he turned them over to the State Farm agent. His reason was that the appellant "wasn't doing anything about it."
The appellant, following the admission by Ausborn that he had a record for traffic violations, contacted the South Carolina State Highway Department "around the first of December" and requested a report concerning any arrests, convictions and/or suspensions recorded against Ausborn. The Highway Department gave this report to the appellant "about December 16th or 22nd, 1965" and such indicated the arrests, convictions and suspensions referred to above. The information contained in the aforesaid report was the first full knowledge the appellant had of the falsity of the representations contained in Ausborn's application for insurance. On April 7, 1965, a credit investigation firm, employed *647 by the appellant, had reported that Ausborn had no traffic convictions, revocations, suspensions or criminal record. Thereafter, on December 29, 1965, the adjuster again contacted Ausborn and he executed an agreement authorizing the appellant to investigate, negotiate, settle, deny or defend any claim arising out of the accident of March 10, 1965, and by so doing, it would not waive or relinquish any of the rights of Ausborn, or of the company, or of the appellant, under any contract of insurance.
The trial judge found that the conduct of the appellant amounted to both a waiver and an estoppel. Here, we need not concern ourselves with the technical distinction existing between "waiver" and "estoppel". In the case of Boyle Road & Bridge Co. v. American Employers' Ins. Co. of Boston, Mass., 195 S.C. 397, 11 S.E. (2d) 438, this court said:
"Technically, a distinction exists between `waiver' and `estoppel', and the terms are not convertible, since a waiver is an intentional relinquishment of a known right, and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question, and a consequent change of position to his detriment. Under the law of insurance, the distinction between estoppel and an express waiver is fairly easy to preserve, but it is otherwise when the distinction to be drawn is between estoppel and a waiver implied from conduct. Partially, as a result of the difficulty in making a distinction, but more because of the fact that both doctrines are applicable to insurance cases, the Courts have found it unnecessary or inadvisable to make a distinction between `waiver' and `estoppel', and have used the terms interchangeably."
Ausborn knew that the statements made by him in his application for insurance were false and that a full disclosure by him of his driving violations and that he had had a liability policy cancelled, declined or refused would have seriously jeopardized his application for insurance. The failure of Ausborn to make such full disclosure *648 was sufficient to warrant the appellant in rescinding the binder made. In so doing, the appellant took no action against Ausborn which in any way misled him or brought a deleterious change of his position, or lulled him into a feeling of security. All of the acts and statements on the part of the appellant, upon which is sought to assert a waiver or estoppel, were done and made in the absence of knowledge of the falsity of the representations made by Ausborn in his application. The appellant could not have intentionally relinquished its right to deny coverage under the binder in the absence of knowledge of the false representations made by Ausborn.
The burden of proof was upon the respondent to show that the appellant had knowledge of the grounds upon which it could avoid liability at the time it committed the acts and made the statements asserted to constitute a waiver or estoppel. This the respondent, in our opinion, has failed to do. It is our conclusion, for the reasons hereinbefore stated that the appellant, under the binder issued by it on February 7, 1965, never afforded any coverage to the respondent.
This record shows that the Hugheys have now obtained judgments against Ausborn and as such are his judgment creditors. These judgment creditors have no greater rights under the binder herein involved than Ausborn. Crook v. State Farm Mut. Auto. Ins. Co., 235 S.C. 452, 112 S.E. (2d) 241.
It is stipulated that State Farm Mutual Automobile Liability Insurance Company had issued to the Hugheys a liability policy containing an uninsured motorist endorsement and that if the appellant was successful in this appeal that it would be the responsibility of State Farm to bear the cost of defending the Hugheys tort actions and to provide them coverage within the limits of its policy.
The judgment of the lower court is reversed and this case remanded thereto with instructions to enter judgment for the appellant.
*649 Reversed and remanded.
LEWIS and LITTLEJOHN, JJ., concur.
BUSSEY and BRAILSFORD, JJ., dissent.
BUSSEY, Justice (dissenting):
The cardinal question on this appeal is simply whether the findings of fact on the part of the court below are supported by any competent evidence in the record. Being of the view that his key and controlling findings are so supported, I am compelled to dissent.
Many of the findings of fact are, beyond dispute, fully supported by the evidence and I shall here deal with only two principal findings which are said to be unsupported by any evidence. They are as follows: (1) McNair knew on February 7th when he took the application and issued the binder that a previous liability policy had been canceled; (2) that appellant was not relying on the truth of the statements contained in the application when on March 12th it wrote Ausborn declining to issue the policy, but, in effect, offering to provide coverage through the date of the collision upon payment of the premium for the interim period.
With respect to the first finding, McNair testified on direct examination that he had no knowledge of the cancellation of the previous policy, but his testimony as a whole is clearly susceptible of the inference that he, in fact, did know. He frequently was called in at the automobile agency where the application was taken and he wrote a lot of his business there. The application itself showed that the car had been purchased the previous month. McNair was aware of the requirement of the agency that the car could not be driven off the lot unless covered by liability insurance, and that it could not be driven therefrom on the date in question in the absence of such insurance. To quote briefly from his testimony:
"Q. You knew that was their rule, and when you did business with this boy on February 7th you told him that *650 he was covered so that they would turn the car loose to him again?
"A. I issued a binder, I sure did. That's right."
Key and important facts found to be known to McNair when the binder was issued were the cancellation of the prior policy and the one actual conviction of Ausborn for traffic violation followed by a license suspension. McNair's knowledge was imputable to appellant and it was charged not only with notice of what McNair knew, but also with what he could have known once put upon inquiry by facts disclosed to him. Mickle v. Dixie Sec. Life Ins. Co., 216 S.C. 168, 57 S.E. (2d) 73; Ellison v. Independent Life & Accident Ins. Co., 216 S.C. 475, 58 S.E. (2d) 890; Huestess v. South Atlantic Life Ins. Co., 88 S.C. 31, 70 S.E. 403.
As to the second challenged finding, there are conflicts in the testimony of appellant's witnesses on this point. Mr. Shealey of its underwriting department, who wrote the letter of March 12th, testified on direct examination that the application was in the process of being rejected, at the time appellant received notice of the accident, solely on the ground that appellant did not insure unmarried males under age twenty-five. His testimony in this respect is in conflict with what the agent McNair said and did. McNair's testimony was to the effect that appellant would and did insure such individuals, if other insurance was purchased by them when buying liability insurance. Concurrent with the application for liability insurance McNair took from Ausborn an application for life insurance with a company which is obviously affiliated with appellant and represented by both Shealey and McNair. He was paid and retained a premium therefor.
When Shealey wrote the letter, he was, of course, charged with the knowledge of the information previously obtained by McNair on February 7th, and on cross examination he admitted that when he wrote the letter, he had already received information to the effect that Ausborn was a reckless driver and had reason to believe that he was guilty of traffic *651 violations, contrary to the statements contained in the application. In view of the foregoing, I think it cannot be soundly said that there is no evidence supporting the findings of the judge that appellant was not relying on the truth of the statements in the application when the letter was written.
Aside from the findings in this respect being supported by evidence, appellant's complaint contains, I think, a clear judicial admission to that effect. This action was commenced on January 4, 1966, long after appellant had fully investigated all facets of the matter. Paragraph 7 of the complaint alleges,
"The reason the said policy was not issued was because of the false statements made by the defendant Melvin H. Ausborn to the plaintiff in said application."
The quoted allegation is, of course, binding upon appellant. It specifically alleges the reason for the letter of March 12th, and is, I think, aside from the evidence, conclusive of the fact that appellant was not, in fact, relying on the truth of the statements contained in the application when the said letter was written.
To briefly summarize the highpoints, there is evidence to support the following key facts. Appellant knew at the time of the issuance of the binder of Ausborn's one actual conviction, the suspension of his drivers license, and the cancellation of a prior liability policy; and when the letter of March 12th was written, it knew that there were untrue statements in the application; that Ausborn was a reckless driver, and that in all probability he had a record of other traffic violations. Following the letter of March 12th, in spite of the foregoing knowledge on its part, it accepted and retained the premium for the interim or binder period, and represented to Ausborn and all other interested parties that he, in fact, had coverage until December 30th following the accident when it decided to deny coverage. These facts clearly support the ultimate conclusion of the judge that *652 appellant had waived its right to deny coverage because of any alleged false statements in the application.
In view of my conclusion as to waiver, it is not really necessary to discuss estoppel fully. In brief, however, I think the facts make out a clear case for the application of the doctrine of estoppel. The tort plaintiffs and their insurer, State Farm, are parties to the action. In the absence of coverage by appellant, State Farm will be required to pay the judgments of the tort plaintiffs, under its uninsured motorist coverage, and will become subrogated to their rights against Ausborn. These parties have clearly altered their positions to their detriment as a result of the conduct of the appellant. But for the assurance of coverage on the part of the appellant, the record shows that Ausborn's automobile would have been attached and that it had a value following the accident in excess of $2,000.00. By the time coverage was denied, the automobile had long since been disposed of, and no doubt greatly depreciated even if it could be found. In addition to the automobile, the evidence reflects that Ausborn was possessed of substantial assets at the time of the accident and it is clearly inferable from the record that such assets have now been largely dissipated.
BRAILSFORD, J., concurs.