## 19092

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant, v. Bobby CHAVIS, Patsy Gantt Berry, John David Berry, Jr., Angelia Marie Berry, a minor under the age of fourteen (14) and Randall Keith Berry, a minor under the age of fourteen (14) years of age, and State Farm Mutual Automobile Insurance Company, Respondents.

(176 S. E. (2d) 131)

508

*Messrs. Lumpkin & Lafaye,* of Columbia, *for Appellant,*

*Messrs. Marshall B. Williams* and *William T. Klapman,* of Orangeburg, and *Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Respondents,*

August 4, 1970.

Moss, Chief Justice.

This action is one under the "Uniform Declaratory Judgments Act" Section 10-2001 *et seq.,* 1962 Code of Laws. It is brought by Government Employees Insurance Company, the appellant herein, to have the court declare a policy of automobile liability insurance, dated October 7, 1966, issued by it to the respondent, Bobby Chavis, insuring a 1966 Ford automobile, void *ab initio,* because of certain untrue, false and fraudulent misrepresentations made by Chavis in his application for said policy, dated October 6, 1966.

It is admitted that on June 11, 1967, during the policy period, that Bobby Chavis, while driving the 1966 Ford

automobile collided with an automobile owned by John David Berry, Jr., being driven at the time by his wife, Patsy Gantt Berry, with John David Berry, Jr., Angelia Marie Berry and Randall Keith Berry as passengers in said car. All of the Berry were injured as a result of the collision and claims are pending or suits have been filed against Chavis for their personal injuries. All of the Berrys are respondents in this action. State Farm Mutual Automobile Insurance Company was made a party to this action, because it had issued a policy of automobile liability insurance to John David Berry, Jr., which provided uninsured motorist coverage to the Berry family, and it would be liable under such provisions in the event that the policy issued by the appellant to Bobby Chavis was void *ab initio.*

All of the respondents have filed answers containing qualified denials and alleging, *inter alia,* that the actions and conduct of the appellant following the accident, by making an investigation and leading all parties to believe that its policy was in full force and effect, and representing to the Berrys that it would make settlement for their personal injuries, is now estopped to deny liability and has waived any rights which it may have had to deny coverage on account of the alleged untrue, false and fraudulent misrepresentations made by Chavis in his application for the liability insurance policy in question.

During the course of the trial, the respondents were granted leave, over the objection of the appellant, to amend their answers so as to allege that under the express provisions of an amendment to the policy the appellant had no right to rescind its policy for any untrue or false representations made by Chavis.

This case was, by consent, referred to the Honorable C. E. Summers, County Judge, as Special Referee, to take the testimony and to report his findings of fact and conclusions of law to the court. After taking the testimony, the special referee filed his report in which he found that the appellant

was estopped to deny liability and had waived any right that it may have had to deny coverage on account of the false representations made by the insured in the application he submitted. He also found that under the express provisions of the policy and under the applicable statute the appellant could have cancelled the policy at any time, if it was procured through false representations which were relied upon by the appellant, but it had no right to rescind the policy and make it void *ab initio*.

The appellant filed numerous exceptions to the report of the special referee. In due course, they came on to be heard before The Honorable Louis Rosen, Judge of the First Circuit, who, by an order dated August 15, 1969, adopted and affirmed the findings of fact and conclusions of law of the special referee. He directed that the complaint of the appellant should be dismissed and held that the policy issued to Chavis was valid and afforded coverage applicable to the claims made by the Berrys. This appeal followed.

The appellant is a direct writer of automobile liability insurance and solicits business by mailing advertising material to persons whose names and addresses have been secured from various mailing lists. An inquiry card is enclosed with such material. A person desiring information concerning insurance with the appellant fills out such a card, giving his name and address, occupation, type and use of automobile. Bobby Chavis mailed in an inquiry card and received an application blank. This application was filled out and signed by Bobby Chavis and mailed to the appellant. Bobby Chavis certified that the answers to the questions contained in the application blank were true and requested the appellant in reliance thereon to issue to him the policy of insurance applied for therein. Among the questions asked on the application were the following:

"8. Have you or any member of your household ever had any automobile driver's license, permit, or privilege suspended, revoked or refused?

"12. How many motor vehicle accidents of any type or any cause have you (or any operator of your automobile), either as an owner or operator, been involved in during the past five years?

"13. Have you or any member of your family ever been convicted, forfeited bail, or paid any fines for any driving violations or citations (other than parking) during the past three years?"

Chavis answered each of the foregoing questions by writing at the end thereof "No."

Admittedly, the foregoing answers given by Chavis to the questions asked in the application were false and untrue.

The evidence shows, according to the South Carolina Highway Department records, that the driver's license of Bobby Chavis was suspended beginning August 4, 1966, and ending November 4, 1966, based on the point system for evaluating operating records of drivers. Section 46-195 *et seq.*, of the Code. The file of the Highway Department shows driving violations by Bobby Chavis on April 14, 1966, such being a motor vehicle accident, May 28, 1966, June 27, 1966, and September 24, 1966, and for each of said traffic violations he forfeited bail.

Chavis was not called as a witness and offers no explanation or reason for his failure to make a true and full disclosure of all of his driving violations. We do not see how any reasonable inference could be drawn from the record, other than it was the intent of Chavis, in making false and untrue answers to the questions asked, to deliberately deceive the appellant and, thereby, procure the liability insurance. The intent with which misrepresentations of fact are made in an application for automobile liability insurance, may be deduced from the facts and circumstances surrounding the making of the misrepresentations. The testimony on behalf of the appellant is that if Chavis had answered the questions propounded in the application truthfully, it would not have

accepted the risk and issued the policy of insurance in question.

Representations in an application for a policy of liability insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. *Inter-Ocean Ins. Co. v. Harkrader,* 193 Va. 96, 67 S. E. (2d) 894. Where a fact is specifically inquired about, or a question so framed as to elicit a desired fact, a full disclosure must be made, and the insurer has the right to rely upon the answer. An applicant is required to make full answers without evasion, suppression, misrepresentation or concealment of material facts so that such statements will represent his knowledge of the hazards of loss. Appleman, Insurance Law and Practice, Vol. 12, section 7292, page 392. If an applicant undertakes to state the circumstances which can affect the risk, he must do so fully and faithfully. *Stoney v. Union Ins. Co.,* 3 McCord 387. *Southern Farm Bur. Cas. Ins. Co. v. Ausborn,* 249 S. C. 627, 155 S. E. (2d) 902.

The burden was upon the appellant to show not only that the statements made by Chavis in his application for insurance were untrue but, in addition that their falsity was known to Chavis, that they were material to the risk, and relied on by the insurer, and that they were made with the intent to mislead and defraud the insurer.

Under the facts here, undisputed and unexplained by Chavis, we think the only reasonable inference warranted by the evidence is that the liability policy was procured under an application containing false, untrue and fraudulent misrepresentations and said policy never afforded any coverage to Chavis unless the appellant has waived its right to or has become estopped to assert a denial of coverage.

The special referee and the trial judge concluded that the appellant, by its conduct, had waived its right to and was estopped to rescind the policy and make it void *ab initio,* on the grounds of fraudulent misrepresentations in the application for the said policy.

In the *Ausborn* case above-cited, we said:

"Technically, a distinction exists between 'waiver' and 'estoppel', and the terms are not convertible, since a waiver is an intentional relinquishment of a known right, and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question, and a consequent change of position to his detriment. Under the law of insurance, the distinction between estoppel and an express waiver is fairly easy to preserve, but it is otherwise when the distinction to be drawn is between estoppel and a waiver implied from conduct. Partially, as a result of the difficulty in making a distinction, but more because of the fact that both doctrnies are applicable to insurance cases, the Courts have found it unnecessary or inadvisable to. make a distinction between 'waiver' and 'estoppel', and have used the terms interchangeably."

Section 16 of the policy in question provides:

"After this policy has been in effect for 90 days * * * the company shall not exercise its right to cancel the insurance under Part I, subject nevertheless, to the provision of paragraph 2 below.

"2. The insurance afforded for automobile bodily injury liability and property damage liability may be cancelled by the company: * * * (b) If the insurance was obtained through misrepresentations*;"

The asterisk reference at the end of the policy provides:

"This agreement shall not affect the company's right to rescind the policy for fraud or material misrepresentation."

It is apparent that section 16 in the policy above quoted was amended to comply with Section 46-750.51 of the Code,

which provides that no policy of liability insurance issued in this state, insuring a private passenger automobile shall, after the same has been in effect for 60 days, cancel or cause such policy to be cancelled during the term of the policy contract, except for specified reasons, among which, that the insurance was obtained through material misrepresentation. The original section 16, above quoted, was replaced in said policy by the "South Carolina Exception", which reads as follows:

"After this policy has been in effect for 60 days * * * the company shall not exercise its right to cancel the insurance afforded with respect to automobiles classified as private passenger automobiles for Automobile Bodily Injury Liability and Property Damage Liabiltiy coverage, unless, * * *, (2) The insurance was obtained through fraudulent misrepresentation."

In the "South Carolina Exception" the company left out the phrase "This agreement shall not affect the company's right to rescind the policy for fraud or material misrepresentation." It is the contention of the respondents that the appellant had no right to rescind the policy *ab initio* because of its failure to reserve such right in the South Carolina endorsement. It is the contention of the appellant that its right to rescind was not restricted or abolished by its failure to reserve the right as it did in the original section 16 of the policy.

The policy of liability insurance was issued to Bobby Chavis on October 7, 1966, with an expiration date of October 7, 1967. The policy was not renewed. It is noted from the record that the appellant did not exercise its right to cancel the insurance afforded by the said policy during the term of the policy contract, as was provided in Section 46-750.51 of the Code.

It appears from the testimony that in the latter part of October, 1967, an independent adjuster took a prior driving and insurance history from Bobby Chavis and such was

received by the appellant on October 26, 1967, and it revealed the falsity of the answers given by him in his application. Thereafter, on October 30, 1967, after the policy had expired, the appellant made inquiry of the State Highway Department of South Carolina and procured Chavis' driving record and such was received by it on November 7, 1967. There is no evidence in the record that the appellant had any knowledge of the falsity of the answers given by Chavis in his application for the policy in question until the adjuster took a prior driving and insurance history from him in October, 1967.

In the case of *U. S. Fidelity & Guaranty Co. v. Security Fire & Indemnity Co.,* 248 S. C. 307, 149 S. E. (2d) 647, we held that cancellation refers to the termination of the policy prior to the end of the policy period, and termination refers to the expiration of policy by the lapse of the policy period. Rescission is not merely a termination of contractual obligation but is abrogation or undoing of it from the beginning, which seeks to create a situation the same as if no contract ever had existed. *Brannock v. Fletcher,* 271 N. C. 65, 155 S. E. (2d) 532. The cancellation of a liability insurance policy operates prospectively and is to be distinguished from rescission which destroys the policy *ab initio*. In the case of *Ray v. Beneficial Finance Co.,* 92 N. J. Super. 519, 224 A. (2d) 143, it was held that "rescission" contemplates return to *status quo ante*. The action here is one for rescission and a declaration that the insurance contract was void *ab initio*. It appears that prior to the institution of this action Chavis accepted a full refund of the policy premium that he had paid to the appellant.

There is nothing in Section 46-750.51 of the Code to restrict or prevent the appellant from instituting this action to rescind the policy and make such void *ab initio* because of the untrue, false and fraudulent statements made by Chavis in his application for said policy. We know of no authority which requires the insurer to

reserve the right to rescind its policy for fraud or material misrepresentation. We think the trial judge was in error in holding that it was necessary for the appellant to reserve its right to rescind on the grounds stated.

In his application for the issuance of the policy in question, Chavis represented that the answers to the questions therein were true and requested the appellant, in reliance thereon, to issue to him a liability policy. The policy recites that such was issued in reliance upon the truth of the representations made. In the *Ausborn* case we held that the insurer had the right to rely upon the answers in the application.

It is the position of the respondents that the appellant should not have relied upon the answers given by Chavis in his application for the issuance of the liability policy here involved. The charge is made that the appellant could have investigated the answers given and would have found them untrue. It is argued that all of the information upon which the appellant seeks to rescind its policy was readily available to it by making inquiry of the State Highway Department, at a cost of $1.00, and such would have revealed the traffic charges against Chavis and his false answers in his application. It is true that an inquiry by the appellant to the State Highway Department would have revealed the driving record of Chavis. The question arises, with the appellant having no knowledge of the falsity of the answers given by Chavis, whether it should have made an independent investigation to determine the falsity of the answers. The respondents have offered no evidence to show that prudence or diligence required the appellant to make the additional investigation. There is no evidence that reasonable underwriting practice required a further investigation by the appellant.

In *State Farm Mut. Auto. Ins. Co. v. West,* D. C., 149 F. Supp. 289, it was held that where application for automobile liability policy contained answers which on their face were entirely plausible and bore no badge of fraud or decep-

tion, company was not under any duty to investigate the truthfulness of the answers given. In *State Farm Mut. Auto. Ins. Co. v. Wall,* 87 N. J. Super. 543, 210 A. (2d) 109, it was held that insurance company is not precluded from relying on misrepresentation because it has made its own investigation unless the investigation discloses facts sufficient to expose falsity of representations of applicant or which are of such a nature as to place on company the duty of further inquiry. In the connected case of *State Farm Mut. Auto. Ins. Co. v. Wall,* 92 N. J. Super. 92, 220 A. (2d) 282, the insurance company sued to rescind because of the insured's false representation. It appears that a report was available from the New Jersey Highway Department for $1.00 and such would have shown the truth about the applicant's bad driving record. The officers of State Farm testified that while many insurance companies obtained the operating record of all applicants for insurance, its practice was to rely on the representations of the applicant. The trial court held that State Farm refrained from spending the fee for the driving record of Wall since they did not want to know and preferred to rely on the expectation that relief would be afforded if the answers in the application were untrue. It denied rescission. On appeal this was reversed and rescission was granted as to Wall. The court stated that there was no adequate reason to say that the company did not rely on the application.

In *Washington Realty Co. v. American Mut. Fire Ins. Co.,* 252 S. C. 618, 167 S. E. (2d) 617, this court held that the failure of a fire insurer to make inquiry as to whether the insured buildings were occupied at time it issued renewal policy did not result in waiver of occupancy provision as to the building which was vacant at time renewal policy was issued and which was subsequently destroyed by fire.

The rule sanctioned by most of the courts is that where one party to a transaction induces the other party to enter

into it by willful misrepresentation, he cannot escape liability for his fraud by showing that such party could have investigated the representations made and would then have found that they were untrue. 37 Am. Jur. (2d), Fraud and Deceit, Section 250, page 333. Cf. *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1.

It is our conclusion that the appellant was under no duty to investigate the truthfulness of the answers given in the application of Chavis, and by its failure to make inquiry as to the truthfulness of such was neither a waiver nor an estoppel.

The application of Chavis showed that he was unmarried, under 24 years of age, lived in a rural section, drove about 35,000 miles a year, and was requesting a liability policy with limits of $50,000.00 to $100,000.00. The respondents argue that these facts should have given the appellant concern and caused it to make inquiry which, if carried out with reasonable promptness, would have revealed the falsity of the answers given by Chavis in his application. The only evidence in the record on this question is that given by the underwriting manager of the appellant. His attention was directed on cross-examination to the facts immediately stated hereinabove. The questions asked and the answers given are as follows:

"Q. And at the time this underwriter had this application, it wasn't a standard or good risk application, was it, sir?

"A. Well, as far as we are concerned, because of the answers to the balance of the questions on the application at that time we felt it was recommended business and we issued the policy accordingly.

"Q. And, as an underwriter, you would have not checked further on this policy, sir?

"A. No, sir, because we rely on the truthfulness of the answers supplied by the applicant, and everything on the application met with our requirements at the time, and the policy was issued.

"Q. Would you issue a polciy to a 24-year old giving 50 and 100 and 25,000 limits and not check?

"A. Yes, sir, if the information and the answers on the balance of the information were in order.

"Q. Well, what information would it have required on the policy, on the application, for you not to have issued it?

"A. The question concerning violations, the question concerning accidents, the question concerning any prior insurance company refusal, cancellations, and the question concerning physical impairment, and the question also concerning any prior license suspension or revocations by he himself or members of his family."

The fact that Chavis was unmarried, under 24 years of age, lived in a rural section, drove about 35,000 miles a year, and was requesting a liability policy with the limits above stated, could not impute knowledge to the appellant of his driving record nor did such require an inquiry to be made thereabout. The foregoing facts were considered by the appellant in order to arrive at a proper rate classification and a determination of the premium to be charged for the policy issued. It is clear from the testimony above quoted that the appellant relied on the truthfulness of the answers supplied by Chavis and the policy was accordingly issued.

It appears from the record that on June 3, 1967, Chavis was involved in a motor vehicle accident with one Ahneman and he was at that time charged with reckless driving and leaving the scene of the accident and which accident, at the request of the appellant, was investigated by a Mr. Blanton, a representative of Gay and Taylor, independent adjusters. The report of this accident was received by the appellant on June 10, 1967. Thereafter, the appellant paid to Ahneman and State Farm Mut. Auto. Ins. Co., his collision carrier, $197.31 in settlement of his claim.

The accident out of which this case arose occurred on June 11, 1967, when an automobile driven by Chavis was in collision with an automobile owned by John David

Berry, Jr., and being driven at the time by his wife, Patsy Gantt Berry, and in which two children of the Berrys were passengers. All of the Berrys were injured in the collision. As a result of this collision, Chavis was charged with driving his car to the left of the center line of the highway in the direction in which he was traveling. He was tried in his absence, convicted and fined for this offense. This accident was investigated by a Mr. Blanton, a representative of Gay and Taylor, independent adjusters.

The report of this accident was received by the appellant on June 16, 1967. Thereafter, the appellant, at the request of Chavis, on July 18, 1967, issued an endorsement of its policy, changing the vehicle covered to another automobile and adding comprehensive coverage. The respondents argue that since the appellant knew of the traffic charges growing out of the collision with Ahneman and the Berrys and having issued further coverage to Chavis, it thereby waived and became estopped to assert a denial of coverage because of the untrue and false statements made by Chavis in his written application for liability insurance. We do not think that this position is sound. The fact that the claim of Ahneman was settled and after the injury to the Berrys, an endorsement of the Chavis policy changing the vehicle covered to another automobile and adding comprehensive coverage, was not sufficient to put the appellant on notice that untrue and false statements had been made by Chavis in his application for the liability insurance. There could be no waiver in the absence of knowledge by the appellant that Chavis had misrepresented the facts set forth in his application. If the appellant had known at the time it did the acts above recited, that Chavis had misrepresented the facts set forth in his application for liability insurance, then such would have been evidence of waiver, but no evidence has been produced by the respondents to show that the appellant had such knowledge.

The respondents take the further position that because the appellant made an investigation of the Berry accident and

leading all parties to believe that its policy was in full force and effect and that it represented to the Berrys that it would make settlement for their personal injuries, is now estopped to deny liability and has waived any right which it may have had to deny coverage on account of the alleged untrue and false statements made by Chavis in the application that he submitted for the liability insurance.

It appears from the record that after Chavis had been in the accidents of June 3, 1967 and June 11, 1967, the appellant had such investigated by Gay & Taylor, independent adjusters. In the course of the investigation, within a week following the accident, John D. Berry, Jr. was contacted by a Mr. Blanton, who was conducting such investigation. Berry testified that he accompanied Blanton to the scene of the accident and explained to him how it happened, and during his conversation with Blanton he was told that he couldn't make any kind of a settlement then because he wanted to be sure that Mrs. Berry was all right before any kind of an adjustment was made. When asked the specific question as to whether Mr. Blanton told him he would make settlement on this accident, his reply was: "He didn't tell me, no, he never told me, but he wrote me some letters, he wrote a couple of letters telling me when everything is fine and all, to keep the bills."

As a result of the injuries to Mrs. Berry on June 11, 1967, she was hospitalized in Orangeburg, South Carolina. She was attended by nurses and a physician. Berry testified that as of June 29, 1967, he had run out of money and it was necessary for him to borrow money in order to pay the bills for his wife's hospitalization. He testified that if he had been able to settle with the insurance company he would have used the money received to pay his wife's hospital expenses and would not have borrowed any money.

The investigation of the Berry accident and the conversation had by the person making such investigation with John D. Berry, Jr. was done in the absence of knowledge of the falsity of the representations made by Chavis in his

application. The appellant could not have relinquished its right to deny coverage under the policy in the absence of knowledge of the representations made by Chavis.

It has been generally held that an insuarnce company does not waive any defense it may have under a policy by investigating a loss that has occurred thereunder. In the *Ausborn* case we held that the insurer's continuing investigation of an accident involving insured under automobile liability policy and insurer's communication with parties asserting claims against insured and securing of extensions of time in which to plead, all of which was done in the absence of knowledge by insurer of falsity of representations made by insured in application for policy, did not constitute a waiver of right to deny coverage under binder. See also, 16A, Appleman Insurance Law and Practice, Sections 9361.25, 9365 and 9372.

In *Frady v. Smith,* 247 S. C. 353, 147 S. E. (2d) 412, we held that the essential elements of an estoppel as it relates to the party claiming such, are: (1) Lack of knowledge and means of knowledge as to the truth of the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. Medical treatment for the injury to Mrs. Berry was necessary regardless of whether Chavis had a valid policy of liability insurance with the appellant. It was the duty of the husband to furnish such, and in borrowing money in order to pay the bills for his wife's hospitalization was not a change of position to his detriment in reliance upon the conduct and representation of the appellant.

As is heretofore indicated, one of the essential elements of waiver by, or estoppel of, an insurance company, is its knowledge of the pertinent facts, since no one can be presumed to have waived what was not known to him at the time of the alleged waiver, or be estopped by failure to react to what was not known to him

at the time of such alleged failure. Consequently, it is essential that the acts relied on as indicative of waiver or estoppel shall have been done by the insurer with knowledge of the facts giving it a right to treat the policy as unenforcible. All of the acts and statements on the part of the appellant upon which the respondents seek to assert a waiver or estoppel, were done and made in the absence of knowledge of the falsity of the representations made by Chavis in his application. The appellant could not have intentionally relinquished its right or estopped itself to deny coverage under the policy here involved in the absence of knowledge of the false representations made by Chavis. The burden of proof was upon the respondents to show that the appellant had knowledge of the grounds upon which it could avoid liability at the time it committed the acts and made the statements asserted to constitute a waiver or estoppel. This, the respondents have failed to do.

In view of our conclusions hereinabove stated, it becomes our duty to reverse the judgment of the lower court and this case is remanded thereto with instructions to enter judgment for the appellant.

Reversed and remanded.

LEWIS and LITTLEJOHN, JJ., concur.

BRAILSFORD and BUSSEY, JJ., dissent.

BRAILSFORD, Justice (dissenting).

I am not persuaded that the finding of the special referee, concurred in by the circuit judge, that Chavis' insurer waived any right it may have had to rescind the policy because of misrepresentations in the application, is against the clear preponderance of the evidence. In my view, the judgment should be affirmed under the concurrent findings rule. *Crown Central Petroleum Corp. v. Elmwood Properties*, 244 S. C. 588, 138 S. E. (2d) 38 (1964); 3 West's South Carolina Digest, Appeal and Error, Key No. 1022(2) (1952). I, therefore, respectfully dissent.

It is settled law that knowledge of facts sufficient to put a reasonable man on inquiry is equivalent to actual notice of such facts as a reasonably diligent inquiry would certainly have disclosed. *Huestess v. South Atlantic Life Insurance Co.,* 88 S. C. 31, 70 S. E. 403 (1911); *City of Greenville v. Washington American League Baseball Club,* 205 S. C. 495, 32 S. E. (2d) 777 (1945); 39 Am. Jur., Notice and Notices, Sec. 12 (1942).

I assume that the company had the right to rely upon the application initially and to issue the policy without an independent investigation. However, Chavis' gross fault in two accidents in June, 1967, coupled with his violation of the statute against leaving the scene of an accident, was sufficient to put the company on inquiry as to whether the perfect driving record claimed in the application had been falsified. Since the truth could have been ascertained by a simple inquiry of the highway department, the circuit court was justified in charging the company with knowledge of the facts which would have been disclosed by such inquiry. In the light of this constructive notice, the company's reaffirmation of the contract on July 18, 1967, by the issuance of a change of automobiles endorsement and adding comprehensive coverage was evidence of waiver.

Although its claims department recommended that the policy be cancelled because of the information developed in the investigation of the two June accidents, the company declined. Instead, it decided to let the policy "run its course" and again reaffirmed it by writing to Chavis on September 13, 1967, and notifying him that the policy would not be renewed upon its expiration on October 7.

But plaintiff's case need not rest upon constructive notice. On October 26, 1967, the insurer's adjuster notified it that Chavis' driver's license had been suspended on August 4, 1966, contrary to his representations in the application, and on November 8, 1967, Chavis' complete driving record was received by the insurer from the highway department.

In the meantime, the company's adjuster had been keeping in close touch with the injured parties and their attorney, assuring them that his company had the coverage, that Chavis was at fault, and that the only question was the amount of compensation to which they were entitled. By clear inference, the claimants were led to believe that settlement was being delayed only because Mrs. Berry had not reached maximum recovery and was still incurring hospital and medical expenses.

Conversations of this tenor between claimants' attorney and the adjuster continued until mid-January, 1968, more than two months after the company was fully advised as to Chavis' driver's record. Based upon these assurances, the adjuster for claimants' insurer had long since closed his file when, on January 29, 1968, the company took the first step toward recision by issuing a premium refund check to Chavis. This was more than three months after the company received express notice from its adjuster that Chavis' application had been falsified. Neither claimants nor their insurer were notified that the company denied coverage until this action for declaratory judgment was commenced by it on February 14, 1968.

Whether, under the circumstances which have been related, waiver of the company's claimed right of recision should be implied from its failure, after notice of the falsity of the application, to timely assert such right is a question of fact which has been resolved against the company by the special referee and circuit judge. I do not agree that this finding is against the clear preponderance of the evidence, and would affirm the judgment appealed from.

BUSSEY, J., concurs.