## McGEE v. FRENCH.

1. EVIDENCE.—A verbal message sent by one party to the record to another by persons not parties to the record, can only be proven by the messengers after testimony tending to show that the message was communicated.

2. ·IBID.—CLAIM AND DELIVERY.—A claimant may show that he has given notice of his claim to the party in possession of the property in controversy.

3. CHARGE—BAILMENT—BAILOR AND BAILEE.—A Judge, after explaining the law of bailment, may submit to the jury the question whether the facts of the case, as applied to the law, established the relation of bailor and bailee.

4. IBID.—NOTICE.—The Judge properly submitted to the jury the question of fact, whether there were such facts and circumstances as would have put a reasonably prudent man on inquiry, and if they found such facts, it would be notice.

5. NEW TRIAL.—Motion for new trial on ground of entire absence of testimony to support it, properly refused.

Before BENET, J., Greenville, November, 1895. Reversed.

Action in claim and delivery by B. M. McGee against Jesse L. French, for two bales of cotton. Judgment for defendant. Plaintiff appeals.

*Mr. Joseph A. McCullough*, for appellant, cites: *Notice:* 14 S. C., 321; 4 Rich. Eq., 105; 1 Speer Eq., 159. *Agency:* 3 Wheat, 369. *New trial:* 16 S. C., 2; 19 S. C., 489.

*Mr. J. A. Mooney*, contra.

June 29, 1897. The opinion of the Court was delivered by

Mr. Justice Gary. The plaintiff brings this action, alleging in his complaint: "1. That on the        day of November, 1891, the plaintiff was the owner, and entitled to the possession, of two bales of middling lint cotton, aggregating 900 pounds, and of the value of $75. 2. That on the said day of November, 1891, the defendant, then being in possession of the said cotton, unlawfully disposed of the same, and has since, upon demand, refused to deliver the same to the plaintiff, or pay him the value thereof, to his damage $100."

The defendant, in his answer, denies the allegations of the complaint, and sets up as a defense that he had no notice of the plaintiff's rights at the time he turned the cotton over to his sister, Mrs. Charles.

On the 4th of December, 1890, an agreement was entered into between W. H. Charles and B. F. Thompson, whereby the said Charles leased to the said Thompson, for the year 1891, the tract of land upon which the cotton in dispute was produced. The said Thompson agreed to pay as rent for said land 900 pounds of lint cotton, which was to be delivered to the defendant, J. L. French, for the said Charles. On the 4th of December, 1890, Charles, for value, assigned the said contract to the plaintiff, B. M. McGee. The cotton was delivered to the defendant, who in turn delivered it to Mrs. Charles, his sister. The cotton was afterwards sold.

The case was tried before his Honor, Judge Benet, at the November (1895) term of the Court. The jury rendered a verdict in favor of the defendant.

The plaintiff appealed upon exceptions, the first of which is as follows: "1. In not allowing the witness for the plaintiff, W. V. Kirby, to testify as to the contents of a verbal message sent by plaintiff to B. F. Thompson, the tenant, with reference to plaintiff's rights under the rent contract, and the delivery of the cotton provided for therein, and which message was delivered by the said Kirby to Thompson and by Thompson to the defendant,

before he turned over to him the cotton in dispute, said testimony being a link in the chain of notice which plaintiff was required to give of his rights as assignee of Charles." When the witness, W. V. Kirby, was on the stand, the following took place: "Did Mr. McGee at any time in 1891 send a message to Thompson in reference to this rent contract; if so, what was it? (Mr. Mooney objects. Objection sustained. Mr. McCullough excepts.) The Court: I will allow the first part. (Mr. Mooney excepts.) Did Mr. McGee send a message by you to B. F. Thompson? Yes, sir. Did you deliver it? Yes, sir. What was the message? The Court: Not that. (Mr. McCullough excepts.) Plaintiff rests." Thompson is not a party to the action, and it was irrelevant what message was delivered by Kirby to him, unless testimony had also been introduced tending to show that the message was communicated to the defendant. It was not even intimated to his Honor that testimony was to be introduced for the purpose of showing that the message delivered to Thompson was communicated to the defendant. The Circuit Judge was, therefore, not in error in thus ruling.

The second exception is as follows: "2. In not allowing plaintiff to testify as to said message, and in not allowing him to answer the question: 'After this contract was assigned to you, what did you do, if anything, with reference to that cotton?'" When the plaintiff was on the stand, the following took place: "After this contract was assigned to you, what did you do, if anything, with reference to that cotton? About the last of July, Mr. Vincent Kirby was in my office, and— (Mr. Mooney objects. Objection sustained.)" This question was competent, as the plaintiff had the right to show that he had given the defendant notice of his claim. When the question was ruled incompetent, the plaintiff was denied this opportunity. If the answer to the question had been inadmissible as testimony, the defendant could have had it ruled out. As there was error in ruling that the question was incompetent, this exception must be sustained.

The third exception is as follows: "3. In charging the jury, 'It is for you to consider the testimony in this case, whether this was a question of bailor or bailee;' such question being one of law for the Court." That portion of his Honor's charge bearing upon the question raised by this exception is as follows: "You have heard a good deal in the argument about the question of bailor and bailee. It may be necessary that I should explain those terms to you. When lawyers speak of a bailment, they mean a delivery of some personal property to another party, to be held by that person to whom it is delivered according to the special purpose of the delivery, and to be returned to, redelivered, when that special purpose has been accomplished. The person who delivers personal property to another for any purpose like that, is called the bailor, and the person who takes the personal property for any such purpose to hold it, is called the bailee. It has been defined as the delivery of personal property in trust for some special purpose, and upon a contract either express or implied to conform to the object of the purpose of the trust. So, gentlemen, the bailor is the one who places the thing in trust, the bailee is the one who is to hold it for a special purpose, and that person who assumes the responsibility of taking the property in his possession in trust may do so with or without compensation; but whether he receives pay for it or not, when a man assumes a trust knowingly, he assumes all of the responsibility of the trust. It makes no difference whether he is paid for taking care of it or not. So in this case, if Mr. French is the bailee, without hire or reward, or hope of reward, still that does not lessen his responsibility any more than if he was paid for it. The usual doctrine of bailment is that the bailee is to return the property to the bailor. While that is most commonly the case, it might be according to the contract and the circumstances, that the bailee would have to deliver to a third person, such as the bailor's transferee. Thus you see that a bailee assumes the responsibility of

finding out to whom he must deliver the property. He must not carelessly and rashly turn it over; he must turn it over to the true owner, and he must sometimes exercise discretion as to the person who is entitled to receive the property. For instance, if a bailee accepts money to hold until he can ascertain certain facts, he must not turn that money over to the wrong person. In short, a bailee must respond to the claim of the true owner of the property when he has discovered who the true owner is, and he acts at his risk, at his peril, if he disregards notice of the true owner. It is for you to consider the testimony in this case, whether this was a question of bailor or bailee." When this part of the charge is considered as a whole, it is evident that his Honor's intention, after defining at length what constitutes the relation of bailor and bailee, was to submit to the jury the question whether the facts of this case, when applied to the law which he charged, established the relation of bailor and bailee. When the charge is thus construed, it is manifest that the exception cannot be sustained.

The fourth and fifth exceptions are as follows: "4th. In charging the jury, 'It is for you to say whether French had such notice of such facts and circumstances as would put him on the inquiry,' the question of notice, or what constitutes sufficient notice, being one of law. 5. In charging the jury upon the subject of notice: 'That if French was informed that Charles no longer held the rent contract, but that the contract was held by McGee, and that Thompson told French not to turn the cotton over to anybody unless he produced the rent contract, and if this be true, it is for you to say whether that was such information and knowledge as would put a man on inquiry, or would it justify an agent, anxious to do his duty, in ignoring it; that is for you to say.' Whereas he should have charged, that if the aforesaid facts were true, French had actual notice of McGee's rights at the time he turned the cotton over to his sister, and the plaintiff would be entitled to a verdict.

That part of his Honor's charge bearing upon the question raised by these exceptions is as follows: "Now, what was the purpose of the trust—to turn it over to the landlord, Charles? If nothing else appeared, and he had no notice that Charles was no longer entitled to it, then he would have had a right to turn it over to the one whom he was holding it for, or to whoever Charles directed him to turn it over to; but if he had notice that Charles had assigned his interest to McGee, and that McGee was the true party to hand over the rent cotton to, then he was bound to turn it over to McGee, and not to Charles or any one else; and if he failed so to turn over the cotton to McGee, then he would be liable to any damages to McGee that he suffered because of the failure to turn over that cotton to him. But it is for you to say whether French had such notice of such facts and circumstances as would put him on inquiry, and I charge you that if he had such notice that would reasonably have put a man of common sense upon inquiry, so that inquiry would have disclosed certain facts upon inquiry, why then French would be bound as if he knew those facts; because, if a reasonable and diligent inquiry would have informed him that Charles was not the man to turn the cotton over to, but that McGee was, then he is as much bound to turn the cotton over to McGee as if he had actual notice or if he had seen the assignment; and you are to consider from the testimony that if French was informed that Charles no longer held the rent contract, but that the contract was held by McGee, and that Thompson told French not to turn the cotton over to anybody unless he produced the rent contract; and if this be true, it is for you to say whether that was such information and knowledge as would put a man on inquiry or would justify an agent, anxious to do his duty, in ignoring it. That is for you to say. If you come to the conclusion that had he inquired along the line thus indicated that he would have discovered to his satisfaction that not Charles but McGee was the man to turn the cotton over to, why then that would be suffi-

cient notice for him, and you must say whether he had such information. In the first place, it is testified to by Thompson that he met French in the road, that he had the cotton ready, that he asked French what to do with it, that he had got word not to pay it to Charles, that French said he knew his contract, that he could bring it to his house and put it in the grove, and that Kirby says to turn it over to McGee, that he had the rent contract, and does he say that Kirby said McGee said he had the rent contract, and does he also say Kirby might have said not to turn it over to anybody but McGee? It is for you to say whether that was sufficient to put French on inquiry. If so, then he would be bound to have known that McGee and not Charles was the person to pay the cotton to. You are the judges of the testimony in the case. You are to say how much credit you are to award to each witness and what measure of proof you are to regard." When this portion of his Honor's charge is considered as a whole, it is seen that he submitted to the jury the question of fact, whether there were such facts and circumstances as were sufficient to have put a reasonably prudent man on inquiry, and charged them as matter of law that if they found such facts, then it was equivalent to notice, and would be binding on the defendant. These exceptions are also overruled.

The sixth exception is as follows; "6. In refusing plaintiff's motion for a new trial, it appearing from an inspection of the record that there was an entire absence of testimony to sustain the verdict, and that said verdict was not responsive to the charge of the Court." The verdict in this case was in favor of the defendant, and it cannot be said that there was an entire absence of testimony to sustain it, as the jury may not have believed the testimony of the witnesses for the plaintiff. Quite a different question, however, would be presented if the jury had found a verdict in favor of the *plaintiff*, and a motion for a new trial had been made on the ground that there was an entire absence of testimony to sustain it. This exception is also overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.