## 19132

Julie Louise HIGHTOWER, Respondent, v.
GREENVILLE COUNTY, South Carolina, Appellant

(177 S. E. (2d) 785)

*E. P. Riley, Esq.,* of Greenville, *for Appellant,*

*Messrs. McDonald, Cox & Turner* of Greenville, *for Respondent,*

November 25, 1970.

*Per Curiam:*

Greenville County appeals from a judgment recovered against it by the plaintiff for personal injuries sustained when the right front wheel of the automobile in which she was a passenger struck a hole in a blacktop road maintained by the county.

This action was brought under Section 33-921 of the 1962 Code which waives the county's immunity from suit in favor of one who has been injured "through a defect or

the negligent repair of a highway, * * * occasioned by the neglect or mismanagement of the county, * * * provided such person has not in any way brought about such injury or damage by his own act or negligently contributed thereto."

There are two questions presented for determination by this court. The first question challenges the adequacy of the evidence to take the issue of the county's negligence to a jury.

We summarize the evidence in light of the settled rule that all conflicts in the evidence, and all inferences reasonably deducible therefrom, must be resolved in favor of the plaintiff.

On or about September 4, 1968 the office of the County Tax Coordinator received an application for the excavation of a sewer cut in the hard surfaced road at 105 Mayflower Street, maintained by the county. A permit growing out of the application was issued to Lamar Byers Plumbing. Within a few days thereafter the plumber cut the hardtop road from one side to approximately the center, a width of about 18 inches, and connected a residence sewer line to the main sewer line in the street. The cut was then filled in and tamped.

After the permit was issued by the office of the tax coordinator a copy was supplied to the County Supervisor, who is charged with the repair and maintenance of Greenville County roads.

On February 27, 1969 the plaintiff was a passenger in a Nash Metropolitan being driven by her husband. While proceeding along Mayflower Street the right front wheel of the automobile fell into the sewer cut which had become sunken or concave. There was testimony that the sunken area was as much as 10 to 12 inches deep. The impact was of such force that the right front wheel was torn from the car and the plaintiff was thrown against the steering wheel, causing her injury. The county did not have actual notice of the defect at the time of the injury.

The evidence shows that Greenville County is divided into eight districts, with each district having approximately 300 miles of road and each district having a superintendent in charge of maintenance and repairs. The superintendent and other employees make routine checks periodically and make repairs as needed. The supervisor testified that cuts are filled and repaired sometimes as much as a year after being made. He said that these cuts are repaired, "Normally speaking, when the dirt is hard enough—a rule of thumb is, when the dirt is hard enough to drive a ten-penny nail in it, and you can't pull it out with your fingers, it's ready to patch."

Although the county was notified in September that the excavation would be made, leaving soft, though tamped, dirt in the roadway, apparently nothing was done by the county to the cut until after the injury. It is common knowledge that repacked dirt will and does sink, and this is especially true where vehicular traffic passes over it regularly during all kinds of weather. The rapidity with which such an area packs and sinks depends upon the nature of the soil and the efficiency of the tamping as well as the extent of vehicular use and the weather conditions. Dirt can only become packed sufficiently hard to hold a ten-penny nail such that it cannot be pulled out with the fingers, when it sinks below the level of the roadway. The evidence is susceptible of the inference that between September and February this is what happened.

The excavation into which the automobile wheel fell either developed by reason of a gradual sinking, or was dug out by some external influence. The jury was warranted in concluding that the excavation area sank gradually and should have been discovered and repaired prior to February 27. It is inferrable that the county was waiting for the sewer cut area to pack, and waited too long.

> We have held that a county will not be held liable for injuries caused by a defect in a roadway unless it be shown that the county had actual or construc-

tive notice of the defect. Where a defect or dangerous condition, not created by its act or that of its agents, has existed for such length of time that in the exercise of reasonable care the defect should have been discovered and remedied, the county is chargeable with knowledge of such defect, and consequently with negligence in not having remedied it.

The permit to excavate issued to the plumber and filed with the office of the road supervisor was not notice of a defect. If the sewer cut was properly filled and tamped, as testified to by the plumber, it would not be properly characterized as a defect. The permit was, however, notice to the county that the cut would soon be made and filled. From then on the county was alerted to the fact that traffic, use, and weather conditions would tend to pack the cut area, making it sunken or concave, tending to gradually develop a defective condition which might cause injury. Accordingly, the duty devolved upon the county to make inspections and repairs commensurate with the sinking condition of the cut which would normally be expected to develop.

There is no evidence in the record tending to show that the county officials were specifically notified of this defect until March 7, 1969. The testimony differs as to the depth of the hole; the photographer testified that on March 5, 1969, it was about 7 inches deep; the supervisor's employee testified it was about 2 inches deep on March 7; the husband of the plaintiff testified it was 10-12 inches deep on February 27. If the jury believed the husband's testimony and concluded the hole developed gradually, as in the nature of things it would be inclined to do, it was warranted in concluding that some defect existed sufficiently long that it should have been discovered and remedied in the exercise of ordinary diligence in the making of inspections. There is nothing in the record to indicate that the hole developed through any external force such as digging up or such as an unusual washing rain. Whether the excavation became

a defect in sufficient time before plaintiff's injury to give the county constructive notice was a question of fact for the jury.

"The duty of the public authority to use ordinary care in keeping its highways in a safe condition for public travel involves the anticipation of defects that are the natural and ordinary result of use and climatic influences, and it may be charged with constructive notice of their existence by reason of its failure so to anticipate them and its neglect to make sufficiently frequent and careful examination or inspections to enable it to discover them." 39 Am. Jur. (2d), Highways, Streets, and Bridges, § 419 (1968).

In *Campbell v. South Carolina State Highway Department*, 244 S. C. 186, 135 S. E. (2d) 838 (1964) there was no evidence that the defendant had actual notice of a defective condition in the highway. We held that the defendant should have anticipated the defects. This court has held that a municipality must keep its streets in reasonably safe condition for public use, and to that end must use ordinary care and reasonable diligence in inspecting them. *Correll v. City of Spartanburg*, 169 S. C. 403, 169 S. E. 84 (1933). The same rule is applicable to a county.

Our only inquiry is whether there was any testimony which reasonably tended to show that the county had constructive notice of a defect in one of its roads. We are constrained to hold that there was; and that the question was properly submitted to the jury. *Crosby v. City of Chester*, 197 S. C. 66, 14 S. E. (2d) 552 (1941); *Floyd v. Town of Lake City*, 231 S. C. 516, 99 S. E. (2d) 181 (1957).

The second issue presented for determination by this court is whether the trial judge abused his discretion in allowing argument to the jury by plaintiff's counsel, alleged to be improper. The record does not quote the exact words used by counsel. The gist of appellant's contention is that counsel tried to lead the jury into believing that the permit to excavate was itself notice of a defect in the road.

The lower court construed plaintiff's argument to be that the county had notice, from the date of the permit, of an excavation in a county road which it had the duty to maintain; and that common experience would indicate that the "black top" paving would require repair prior to February 27, 1969. Such argument was permissible. Control of arguments is within the broad discretion of the trial judge. *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335 (1962). We find no abuse of that discretion here. Accordingly, the judgment of the lower court is

Affirmed.