1770

James ANDERS and Barbara Anders, Respondents v. SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

(415 S.E. (2d) 406)

Court of Appeals

*Robert J. Thomas* of *Sherrill & Rogers*, Columbia, for *appellant.*

*David A. Fedor* and *David E. Massey* both of *Fedor, Massey & Whitlark*, Columbia, *for respondents.*

Heard Jan. 20, 1992.

Decided Feb. 24, 1992.

*Per Curiam:*

Plaintiffs-Respondents, James Anders and Barbara Anders, bring this declaratory judgment action against Defendant-Appellant, South Carolina Farm Bureau Mutual Insurance Company, asking the court to hold that the insurance company failed in its duty, as required by § 38-77-160 of the South Carolina Code, to offer underinsured-motorist coverage incident to the issuance of a motor vehicle liability insurance policy. The circuit court granted Plaintiffs summary judgment. We reverse.

James Anders (father of Barbara Anders) purchased a policy of insurance from the Defendant through its agent Mary Eager. Herein we refer to James Anders as the Plaintiff. While the policy was in effect, the daughter was injured by an at fault driver. The at fault driver's insurance company has offered the limits of coverage, but in an amount alleged to be less than the damages sustained. The Plaintiff alleges that he was not offered underinsurance at the time the policy was issued as required by statute. The statute, § 38-77-160 of the South Carolina Code, in relative part reads as follows:

> . . . Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist.

Several cases have been decided by the Supreme Court of South Carolina interpreting this provision. In *State Farm Mutual Automobile Insurance Company v. Wannamaker*, 291 S.C. 518, 354 S.E. (2d) 555 (1987), our court adopted the Minnesota Rule designating the requirements for compliance with this statutory provision as follows:

> . . . (1) [T]he insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the

insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

Based on affidavits and depositions, the trial judge granted summary judgment in keeping with Rule 56 of the South Carolina Rules of Civil Procedure, holding that there was no genuine issue of fact to be determined by a jury. It is well established that summary judgment should be granted ". . . in cases in which plain, palpable and indisputable facts exist on which reasonable minds cannot differ." *Main v. Corley*, 281 S.C. 525, 316 S.E. (2d) 406 (1984). The rule is simple but not always easy to apply. Relief granted under Rule 56 is drastic because it terminates the cause of action on the merits. Relief granted by way of summary judgment is a first cousin to a directed verdict. Rule 56 speaks in terms of "no genuine issue of fact." A directed verdict speaks in terms of "only one reasonable inference." In each instance the party granted relief prevails as a matter of law and the litigation is ended.

By granting a summary judgment or a directed verdict, the judge in effect holds as a matter of law: "The evidence is all on one side; the facts are not debatable; a jury must believe the movants interpretation of the facts and the inferences to be drawn therefrom." The showing before the court falls short of such requirement.

Plaintiff contends that underinsured motorist coverage should be available to him notwithstanding the fact that he never contracted to purchase the coverage from the defendant because it was never offered to him. The Defendant asserts its policy with the Plaintiff does not include underinsured coverage because it effectively offered the coverage which was declined.

## FACTS

Most of the facts as developed by the affidavits, exhibits and depositions are not greatly in dispute. Others are in substantial contest.

The Plaintiff applied to the Defendant to procure a liability insurance policy on his vehicle and was served by an agent

who was an old friend of some twenty years. One of the reasons for buying insurance from this company was the friendship of the agent.

The insured is a highly sophisticated attorney at the Columbia bar who served with the Office of the Attorney General and later as Solicitor for sixteen years. He is now practicing law. In his affidavit, he stated that he was ". . . completely unfamiliar with the laws regarding underinsurance in South Carolina."

In Plaintiff's deposition, he testified as follows:

> Q. Your objective was to have the premium as low as possible?
> A. I got tired of giving money, so much money to insurance companies every year, yes.
>
>      *    *    *    *    *    *
>
> Q. Did she [the agent] ever discuss prices or quote prices to you in advance of requesting a check?
> A. I don't think so. I think I just told her I wanted the minimum and I had to pay a membership fee. I remember that. I don't understand why I have to pay a membership fee, but I've been paying it ever since.

The affidavit of agent Eager includes the following:

> In response to Anders' request, I developed a quotation for coverage on the described vehicles which included bodily injury liability limits in the amount of $50,000 per person/$100,000 per accident and property damage liability coverage in the amount of $25,000 per accident. In addition, my quotation included the price of uninsured motorist coverage and underinsured motorist coverage with the same limits as that cited for bodily injury and property damage liability. My quotation also included the price of Personal Injury Protection coverage in the amount of $1000. This quotation was communicated to Anders with my recommendation that he carry higher than the minimum limits of liability insurance and that he also carry uninsured and underinsured coverages equal to the liability limits on the vehicles.
>
>      *    *    *    *    *    *

Anders agreed to purchase liability limits of 50/100/25 as recommended but insisted that he was not interested in any other optional coverages that South Carolina law did not require in order to comply with financial responsibility requirements.

\* \* \* \* \* \*

. . . I hand-carried the applications to Mr. Anders' office that same day where he signed the application I had prepared, initialed the spaces indicating that he had rejected the optional excess uninsured and underinsured motorist coverages and provided me with check for the premium reflected in the applications. In initialing these spaces, I specifically advised that his initials were to indicate his rejection of the other optional coverages we discussed.

## DISCUSSION

The trial judge ruled ". . . it is clear at the very least that Farm Bureau has not met the third prong of *Wannamaker* in that there is no evidence whatsoever that its agent intelligibly advised James Anders of the nature of the optional underinsurance coverage. It is encumbered upon Farm Bureau to prove that it has met all four prongs of the *Wannamaker* test. This it has failed to do."

The burden of proving that there was no genuine issue of fact to be determined by a jury was upon the Plaintiff. He might prevail by showing, to the exclusion of other reasonable inferences, that the Defendant failed as to at least one prong of the requirements of *Wannamaker*.

At the summary judgment stage of the proceeding, it was only necessary for the Defendant to submit a scintilla of evidence warranting a determination by the jury. This it has done.

The case was not before the trial judge and it is not before this court on the merits. The only question for determination is that of "genuine issue." There is evidence which, if believed, would warrant the conclusion that the Defendant mailed to Plaintiff literature sufficient to constitute the offer required by statute and *Wannamaker*. But assuming this is not sufficient, we think such evidence, along

with other evidence, supports the inference that a meaningful offer was made and intelligently refused. The Plaintiff indicated with check marks on the application that he did not want underinsurance.

In determining whether sufficient advice was given to the Plaintiff, the sophistication of the applicant may be considered. One who is ignorant and unwary might require more explanation than a sophisticated applicant. In a kindred matter, the Supreme Court recognized this fact in *Burwell v. S.C. National Bank*, 288 S.C. 34, 340 S.E. (2d) 786 (1986). In that case the Court said ". . . an individual's education, business experience and intelligence are all considered."

The two issues submitted to the court for determination at this time, as taken from Defendant's brief, are as follows:

1. Is an issue of fact presented as to whether Respondent James Anders, who is both a lawyer and a businessman, understood underinsured-motorist coverage when such coverage was offered to him by Appellant's agent and when Respondent James Anders initialed rejection blocks declining offers of such coverage?

2. Is an issue of fact presented as to whether Respondent James Anders, who is both a lawyer and a businessman, waived the statutory right to have underinsured-motorist coverage explained to him?

We hold that a genuine issue of fact is involved and that the Defendant is entitled to prevail on both issues.

The order of the judge is reversed and the case is remanded for further proceedings.

Reversed and remanded.