2269

Maesetta RICE, Appellant v. The SCHOOL DISTRICT OF FAIRFIELD, Respondent.

(452 S.E. (2d) 352)

Court of Appeals

*Ernest E. Yarborough,* Winnsboro, *for appellant.*

*Kenneth L. Childs, David E. Dubberly* and *Allen D. Smith* all of *Childs & Duff,* Columbia, *for respondent.*

Heard Nov. 3, 1994.

Decided Dec. 12, 1994; Reh. Den. Jan. 20, 1995.

*Per Curiam:*

The appellant, Maesetta Rice, brought this action alleging gross negligence against the respondent, Fairfield County School District (District), pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 through 15-78-190 (Cum. Supp. 1992). Rice alleges she suffered losses in the form of humiliation and embarrassment, loss of wages, injury to reputation, and loss of training opportunities when she was removed from a position in a work experience program implemented by the South Carolina Department of Social Services (DSS)[1] because a District official reported to DSS the exis-

---

[1] The work experience program administered by DSS was designed to enable persons receiving welfare to become self-sufficient by gaining experience in the workplace. As a result of participating in this program, Rice was assigned to a position as a food service worker at Fairfield Middle School Cafeteria.

tence of rumors that Rice had AIDS and other communicable diseases. DSS was not named as a defendant in this action. The trial court granted the District's motion for summary judgment, holding the District is immune from liability under § 15-78-60(22) of the Tort Claims Act because Rice's alleged loss resulted from the termination or reduction of benefits under a public assistance program. Rice appeals. Although we find a genuine issue of material fact exists as to the applicability of § 15-78-60(22), we, nevertheless, affirm the order granting summary judgment on a different ground appearing in the record.[2]

On January 30, 1990, the District and DSS executed a written contract in which the District voluntarily agreed to participate in a work experience program implemented by DSS. Elizabeth Bowdler, the Work Experience Specialist, was responsible for administering the program. Under the program, DSS places its clients in positions with public agencies for training for a maximum of 12 weeks. Participation is mandatory for eligible individuals, and failure to cooperate will result in reduction or elimination of welfare benefits.

Pursuant to the contract, the District accepted the assignment of two persons, including Rice, to the cafeteria of Fairfield Middle School to learn the food service trade. Under the program, however, Rice was never a District employee, and did not receive any compensation. Rather, she continued to receive her regular welfare checks from DSS.

Prior to the placement, Bowdler and Rice met with Dawn Busa, the District's Personnel Director, and Jenieffe Heaven, the Food Services Coordinator. At the conference, Bowdler instructed the District staff to keep her apprised of all developments with the placements, and to notify her if there were any problems with a placement, as it was her responsibility to oversee the assignments. The District also agreed to complete a biweekly evaluation form to keep DSS informed of the progress of the work experience assignments. In addition, Bowdler told Rice to contact her if she encountered any problems.

On October 22, 1990, Rice began her work experience. The cafeteria manager and other employees immediately began

---

[2] *See* Rule 220(c), SCACR; *see also Doe v. Doe,* 286 S.C. 507, 334 S.E. (2d) 829 (Ct. App. 1985) (The Court of Appeals has the right to sustain a trial judge's order on any ground appearing in the record).

hearing rumors that Rice had AIDS and other communicable diseases. As a result of these rumors, a number of students stopped eating lunch, and threatened to boycott the cafeteria. Because the rumors affected the cafeteria's operations and they were of such a serious nature, the cafeteria manager contacted Heaven to inform her of the problems. At this time, Rice was moved from the serving line to the back of the cafeteria.

Heaven visited the lunchroom and in her deposition testified she observed students pointing at Rice and stating she had AIDS. In addition, Heaven testified that several parents telephoned her to complain about the presence of Rice in the lunchroom. Because DSS required the District to keep it informed of any problems concerning placements, Heaven contacted Bowdler on October 23, 1990 and appraised her of the rumors and resulting disruptions. Heaven advised Bowdler that the rumors were causing problems, but she was willing to wait to see if they would be resolved. However, the problems persisted, and Heaven again contacted Bowdler on November 1, 1990 to inform her that students and parents were still complaining about Rice. After receiving this call, Bowdler conferred with her supervisor at DSS and within four hours, DSS decided to remove Rice from her assignment. That day, Bowdler telephoned Rice while she was working and told her to leave the cafeteria. Rice complied with the request to leave the job site.[3] Bowdler did not terminate Rice from the Work Experience Program, but, instead, offered to move her from one component of the program to another for further training.

At the hearing on the District's motion for summary judgment, the trial court found that Rice was seeking recovery for a loss resulting from the termination of her placement as a food service worker in the school cafeteria. Accordingly, the court ruled, Section 15-78-60(22) of the Tort Claims Act, which provides that a governmental entity may not be liable for a loss resulting from the termination or reduction of benefits under a public assistance program, applies as an exception to bar the District from being liable to Rice.

On appeal, Rice contends this exemption is not applicable in this case because neither her benefits nor the program itself

---

[3] Subsequent to her dismissal from the work experience position, Rice took two tests for the AIDS/HIV Antibody, which were both negative, conclusively disproving the rumors.

was terminated as envisioned by § 15-78-60(22). We agree that a genuine issue of material fact exists as to the applicability of § 15-78-60(22).

The Tort Claims Act provides the exclusive remedy in tort against the District. S.C. Code Ann. §§ 15-78-20(b), -30(d), -30(h) (Cum. Supp. 1992). The Act contains numerous exceptions to its waiver of sovereign immunity, and those exceptions must be construed liberally in favor of limiting the liability of the State and its political subdivisions. S.C. Code Ann. § 15-78-20(f); *See also Gardner v. Biggart*, 308 S.C. 331, 417 S.E. (2d) 858 (1992). However, the burden of establishing a limitation upon liability or an exception to the waiver of immunity is upon the governmental entity asserting it as an affirmative defense. *Niver v. S.C. Dept. of Highways & Public Trans.*, 302 S.C. 461, 395 S.E. (2d) 728 (Ct. App. 1990).

It is well established that summary judgment is appropriate only when it is perfectly clear that no genuine issue of material fact exists and further inquiry into the facts is not desirable to clarify the application of the law. *Duck v. Wallace Assoc., Inc.*, — S.C. —, 438 S.E. (2d) 269 (Ct. App. 1993). In determining whether triable issues of fact exist, all inferences from the facts in the record must be viewed in the light most favorable to the party opposing the summary judgment motion. *Manning v. Quinn*, 294 S.C. 383, 365 S.E. (2d) 24 (1988). Even when there is no dispute as to the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should not be granted. *Hamilton v. Miller*, 301 S.C. 45, 389 S.E. (2d) 652 (1990).

Undisputedly, Rice was participating in the Work Experience Program which is a public assistance program. However, whether she suffered a reduction of benefits under the program is a genuine issue of material fact precluding summary judgment. Elizabeth Bowdler testified that after Rice's dismissal from the position in the cafeteria, she was not removed from the Work Experience Program; instead "she was still in our program and we still offered her many benefits." She further testified that Rice continued to receive AFDC checks and those checks were not related to the services she was providing in the Work Experience Program.[4]

---

[4] She also testified that if Rice's performance was unsatisfactory or "she had not done something in the program, she might have lost part of her check."

Because there is a genuine issue of material fact concerning the termination or reduction of benefits, the trial court erred in granting summary judgment on the basis that the District is immune from liability under § 15-8-60(22) of the Tort Claims Act. Nevertheless, we affirm the dismissal of Rice's gross negligence claim because the District violated no duty owed to Rice in informing DSS of the problems that arose after Rice was placed in the cafeteria.[5]

Gross negligence is the intentional, conscious failure to ■■ do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. *Richardson v. Hambright*, 296 S.C. 504, 374 S.E. (2d) 296 (1988). Gross negligence connotes the failure to exercise a slight degree of care. *Id.* In order to prove her gross negligence claim, Rice is required to show that: (1) the District owed her a duty to "verify the accuracy of all information which would be communicated to the work support system supervisor of [DSS] concerning [Rice's] fitness for the job in question;"[6] (2) the District breached this duty in failing to exercise a slight degree of care; (3) Rice was injured, and; (4) the District's breach of duty proximately caused this injury. *South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 289 S.C. 373, 346 S.E. (2d) 324 (1986); *Folkens v. Hunt*, 290 S.C. 194, 348 S.E. (2d) 839 (Ct. App. 1986). For negligent conduct to become actionable, it must violate some specific legal duty owed to the plaintiff. *Foster v. Greenville County Medical Soc.*, 295 S.C. 190, 367 S.E. (2d) 468 (Ct. App. 1988). In the absence of a legal duty to prevent an injury, foreseeability of that injury is an insufficient basis on which to rest liability. *Id.*

Pursuant to the written contract between the District ■ and DSS, the District was required to notify DSS of the situation surrounding the placement of Rice, in-

---

[5] Although the trial court held that material questions of fact existed regarding the duty owed to Rice by the District, we disagree. The determination of any question of duty—that is, whether the defendant stands in such relation to the plaintiff that the law will impose upon him an obligation of reasonable conduct for the benefit of the plaintiff—has been held to be an issue of law for the court rather than for the jury. *See* 57A Am. Jur. (2d) *Negligence* § 86 (1989); *see also Lundy v. Southern Bell Tel. & Tel. Co.*, 90 S.C. 25, 72 S.E. 558 (1911) (What constitutes negligence is a question of law for the court; but whether negligence in fact exists in a particular case is a question of fact for the jury).

[6] Rice's complaint is premised on the allegation that the District's report to DSS was inappropriate because the District was obligated to investigate the rumors that Rice had AIDS before passing the information to DSS.

cluding the rumors of AIDS and the resulting disruptions in the cafeteria. Their contract specifically provided that DSS would monitor the trainee's work experience performance and progress, and also required the District to complete biweekly evaluation forms for DSS apprising it of all developments with the placements. Contrary to Rice's contention, the District had a duty to notify DSS, and it also obviously had a duty to uphold the safe and efficient operation of the school cafeteria. DSS, not the District, was responsible for the ultimate release of Rice from the cafeteria position. Based on the undisputed record before this court, no reasonable juror could conclude that the District's communications with DSS were inappropriate or that they rose to the level of gross negligence.

Moreover, Rice's counsel conceded during oral argument that Rice's position with the District was no more than an at-will employee. Even as an at-will employee, she could have been "terminated at any time, for any reason, or for no reason at all, irrespective of any inadequate investigations, false assumptions, or failures to reevaluate on the part of the employer." *Gause v. Doe*, — S.C. —, 451 S.E. (2d) 408 (Ct. App. 1994) (Davis Adv. Sh. No. 26 at 34); *see, e.g., Small v. Springs Indus., Inc.*, 300 S.C. 481, 388 S.E. (2d) 808 (1990).

Because further development of the facts could not create a duty on the part of the District to investigate the rumors before reporting them to DSS, we hold that Rice's claim was properly dismissed. The fact that the trial judge committed error in basing his decision on the wrong ground does not preclude affirmance upon a proper ground sustained by the record. *State v. Davis*, 278 S.C. 544, 298 S.E. (2d) 778 (1983).

Affirmed.

CURETON and CONNOR, JJ., concur.

GOOLSBY, J., concurs in separate opinion.

GOOLSBY, Judge (concurring):

I concur in the result reached by the majority. I would not reach, either directly or indirectly, the issue of whether S.C. Code Ann. § 15-78-60(22) (Supp. 1993) could be used by the school district to shield it from liability in this instance. Indeed, Rice admits in her brief she "did not suffer a reduction of benefits under the public assistance program."