479 S.E.2d 822

**Regina L. STROTHER and Douglas Strother, Appellants,**

v.

**LEXINGTON COUNTY RECREATION COMMISSION, Respondent.**

**No. 2586.**

Court of Appeals of South Carolina.

Heard Sept. 11, 1996.

Decided Nov. 4, 1996.

Rehearing Denied Jan. 23, 1997.

H. Patterson McWhirter, Lexington, for appellants.

Patrick J. Frawley, Lexington, for respondent.

HOWARD, Judge:

Regina and Douglas Strother sued Lexington County Recreation and Aging Commission (Commission) for damages incurred when Regina Strother tripped over a sprinkler head while playing softball on one of the Commission's fields. The Strothers appeal the circuit court's order granting summary judgment to the Commission. We affirm.

## FACTS

The Commission operates the Pine Grove Softball Complex. While Regina Strother was playing softball at the complex, she attempted to catch a fly ball in the outfield, and in the process hit a water sprinkler head and twisted her left knee.

The softball complex contains five softball fields, which are each equipped with a sprinkler system using the Rainbird R–70 (R–70) pop-up sprinkler heads. The piston-driven sprinkler heads are encased in heavy-duty industrial grade plastic cases with a heavy-duty retract spring. The R–70 has a 3¼″ inch pop-up height and a 2¼″ inch exposed diameter. The Commission installed the sprinkler system in the fall of 1991, just prior to the first full spring of playing in 1992. The sprinkler system watered each of the zones of the fields in thirty minute intervals every night. The Strothers alleged the sprinkler head on which she tripped was defective because it did not retract.

The Commission moved for summary judgment, asserting it did not have actual notice of the alleged defect nor opportunity to correct the defect as required by S.C.Code Ann. § 15–78–60(16) (Supp.1995). The Strothers argued the Commission had actual notice because its maintenance workers had general knowledge pop-up heads on some sprinkler systems did not always retract. They further argued actual notice of the defect in this sprinkler system could be implied, and the maintenance workers should have devised a system to check the sprinkler heads.

The trial judge granted the Commission's motion for summary judgment, finding the Commission did not have actual notice the sprinkler head involved in the incident failed to retract, or that there had been problems with the sprinkler heads at this particular ball field. The trial judge also found the Strothers failed to provide any evidence of actual notice to the Commission, or of a subsequent failure to remedy the defect.

## SCOPE OF REVIEW

Summary judgment is proper when it is clear there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Rule 56(c), SCRCP. In determining whether an issue of fact exists, the evidence and all its inferences must be viewed in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr.*, 313 S.C. 490, 443 S.E.2d 392 (1994).

## LAW/ANALYSIS

On appeal, the Strothers argue the trial judge erred in granting the Commission's motion for summary judgment because the Commission had actual notice of the defect in the sprinkler system. The Strothers assert the Commission had actual notice because its maintenance workers had general knowledge that pop-up heads on some sprinkler systems do not always retract, and actual notice of the defect in the Pine Grove sprinkler system could be implied. The Strothers contend a reasonable inquiry into whether the R–70 had problems similar to other pop-up sprinkler systems would have revealed the problem.

Under § 15–78–60(16), the Commission, as a governmental entity, "is not liable for a loss resulting from: ... maintenance, security, or supervision of any public property, intended or permitted to be used as a park, playground, or open area for recreational purposes, unless the defect or condition causing a loss is not corrected by the particular governmental entity responsible for maintenance, security, or supervision within a reasonable time after *actual notice* of the defect or condition." (Emphasis added.)

■ The primary concern in interpreting a statute is to ascertain and give effect to the intention of the legislature. *Singletary v. South Carolina Dep't of Educ.*, 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994). All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the purpose of the statute. *Id.* Moreover, if a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995).

At issue in this case is what constitutes actual notice in the context of the South Carolina Tort Claims Act. The Act does not define actual notice. Furthermore, after a thorough review of South Carolina case law, we have found no cases construing actual notice within the context of the Act.

The Strothers contend actual notice can be implied from circumstances, but admitted at oral argument they are not aware of any South Carolina cases using the term "implied actual notice." The Strothers rely on South Carolina case law which equates actual notice with inquiry notice.

A review of the applicable case law reveals apparent inconsistency in the use of the terms "constructive notice" and "actual notice." Historically, if circumstances were sufficient to put a person upon inquiry, he was held to have constructive notice. Over time, the application of these terms in different contexts has altered their meaning to the point of equating inquiry notice with actual notice; thus, creating confusion between actual notice and constructive notice. *See Black v. Childs*, 14 S.C. 312, 321 (1880) ("[i]f there are circumstances sufficient to put a party upon the inquiry, he is held to have notice of everything which that inquiry, properly conducted would certainly disclose; but constructive notice goes no further."); *McGee v. French*, 49 S.C. 454, 27 S.E. 487 (1897) (holding where facts were sufficient to be put on inquiry, then it was equivalent to notice); *Huestess v. South Atl. Life Ins. Co.*, 88 S.C. 31, 39, 70 S.E. 403, 406 (1911) (finding inquiry equivalent to actual notice); *Norris v. Greenville, S. & A. Ry.*, 111 S.C. 322, 330, 97 S.E. 848, 850 (1919) (holding if notice sufficient to be put on inquiry, then knowledge is presumed); *City of Greenville v. Washington Am. League Baseball Club*, 205 S.C. 495, 509, 32 S.E.2d 777, 782 (1945) (inquiry is notice); *Government Employees Ins. Co. v. Chavis*, 254 S.C. 507, 176 S.E.2d 131 (1970) (Brailsford, J., dissenting) (knowledge sufficient to put on inquiry is equivalent to actual notice); *Multimedia Pub. of S.C., Inc. v. Mullins*, 314 S.C. 551, 431 S.E.2d 569 (1993) (if notice sufficient to be put on inquiry, then knowledge is presumed); *Fuller–Ahrens Partnership v. South Carolina Dep't of Highways & Pub. Transp.*, 311 S.C. 177, 185, 427 S.E.2d 920, 924 (Ct.App.1993), *cert. denied*, (October 7, 1993) (Cureton, J., concurring and dissenting) ("Actual notice may be inferred from circumstances. That which puts

a party on inquiry may be the equivalent of actual notice.") (quoting *Patellis v. Tanner*, 197 Ga. 471, 29 S.E.2d 419, 424 (App.1944)). Although these cases discuss actual notice within the context of inquiry or implied notice, they never define actual notice.

In contrast, there are cases which appear to define actual notice as express notice and inquiry notice as constructive notice. *See Campbell v. South Carolina Highway Dep't*, 244 S.C. 186, 191, 135 S.E.2d 838, 840 (1964) ("There is no evidence that [the] defendant had actual notice of the dangerous condition of the road at this time; however, the evidence reveals that there had been previous washouts at this point and that during periods of heavy rain the drainage system was insufficient to take care of the excess water, thereby providing defendant with constructive notice of the defect."), *overruled to the extent it holds that an action may not be maintained against the State without its consent McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985) (abolishing the doctrine of sovereign immunity); *see also* 66 C.J.S. *Notice* § 3 (1950) ("Notice is actual when it is directly and personally given to the person to be notified.")

■ Generally, actual notice is synonymous with knowledge. *Hannah v. United Refrigerated Serv.*, 312 S.C. 42, 430 S.E.2d 539 (Ct.App.1993), *cert. denied*, (December 7, 1993). Actual notice may be subdivided into two categories, express and implied. 66 C.J.S. *Notice* § 3; 58 Am.Jur.2d *Notice* § 6 (1989). "Express notice is that kind of actual notice which consists of general knowledge actually brought personally home; information which of itself gives actual notification." 66 C.J.S. *Notice* § 4. On the other hand, "implied notice is generally regarded as a kind of actual notice which consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of the fact." 66 C.J.S. *Notice* § 5.

■ "Implied notice greatly resembles constructive notice, with which it is frequently confounded, and it has been referred to as being the same, or almost the same, as constructive notice...." *Id.; see Black's Law Dictionary* 958 (5th ed. 1979) ("Constructive 'notice' includes implied actual notice and

inquiry notice.") Although implied actual notice and constructive notice are similar, they are distinguishable in that "constructive notice is a legal inference, while implied actual notice is an inference of fact." 58 Am.Jur.2d *Notice* § 7. However, "[i]n order for a person to be charged with notice of facts discoverable by reasonable inquiry, the circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission. . . ." 66 C.J.S. *Notice* § 11(b)(4)(b).

What is clear from a review of case law on the subject is that the meaning of the terms "notice," "actual notice," "express notice," "constructive notice," "implied notice" and "knowledge" must be considered in the context of the analysis. 66 C.J.S. *Notice* § 1 ("The word 'notice' is not a technical one and, while it can have various meanings, the meaning to be given by the courts is to be controlled largely by the context and by the purpose and intent of the statute which provides for or requires it.") "When . . . a statute uses [a] term without defining it, the courts must construe it in the light of the general purpose of the statute and apply such definition as most nearly accomplishes that purpose." 58 Am.Jur.2d *Notice* § 5. By enacting the South Carolina Tort Claims Act, the General Assembly intended "to grant the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability and suit for any tort except as waived by this chapter." S.C.Code Ann. § 15–78–20(b) (Supp.1995). Furthermore, § 15–78–20(f) provides "[t]he provisions of this chapter establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the State." *See Rice v. School Dist. of Fairfield,* 317 S.C. 87, 452 S.E.2d 352 (Ct.App.1994), *cert. denied,* (June 28, 1995). However, we will not construe a statute in derogation of sovereign immunity liberally in favor of the State when, to do so, negates the legislative intent. *Gardner v. Biggart,* 308 S.C. 331, 417 S.E.2d 858 (1992).

Section 15–78–60(16) specifically requires actual notice. Other provisions of the South Carolina Tort Claims Act impose liability if the governmental entity has actual *or* constructive notice. *See* S.C.Code Ann. §§ 15–78–60(10), (15) (Supp.

1995). Because § 15–78–60(16) requires actual notice, it reveals an intent by the Legislature to limit liability by requiring actual knowledge of the defect or condition causing loss. We conclude it was the intent of the legislature, as found by the plain meaning of the words "actual notice," to limit the exposure of the governmental entity to situations involving express notice, thus excluding a duty of inquiry. This construction is consistent with both the historical uses and definitions of the term under South Carolina case law, and with the underlying purpose of the statute. To read "actual notice" in the context of § 15–78–60(16) to include "implied actual notice" would relegate the limitation to an exclusion of only that notice which is legally inferred, as opposed to that which is factually inferred. We are unable to find any rational purpose for such a distinction, or any practical example of its application. Furthermore, such a reading is inconsistent with the policy of giving a liberal construction in favor of limiting liability.

We find additional support for our decision in cases brought under the doctrine of sovereign immunity, prior to the enactment of the South Carolina Tort Claims Act. In those cases, the supreme court indicated that the governmental entity had actual notice when there was specific notification of a defect. *See Hightower v. Greenville Co.*, 255 S.C. 192, 177 S.E.2d 785 (1970) (finding no actual notice where county was not "specifically notified" of the defect until after the accident); *Campbell*, 244 S.C. 186, 135 S.E.2d 838 (where highway suddenly caved in under motorcyclist, highway department had no actual notice of dangerous road condition even though highway department was familiar with the general construction and layout of the road, had worked on the road at infrequent periods, and on occasion had been called to repair the road).

In this case, the Commission denied it had actual notice. In support of this assertion, the Commission submitted excerpts from the depositions of four employees who worked with the sprinkler system. The excerpts indicated the Commission's employees had general knowledge pop-up sprinkler heads sometimes do not retract, but were not aware the R–70 pop-up sprinkler heads at the Pine Grove Complex did not retract.

■ The Strothers submitted three affidavits which stated "maintenance people involved in maintaining sprinkler sys-

tems should most probably be aware" of the problems encountered with sprinkler systems.[1] This general knowledge is insufficient to provide express notice sufficient to impart to the Commission actual notice of the defect.

## CONCLUSION

Viewing the facts in the light most favorable to the Strothers, we find no evidence the Commission had actual notice of the defect in the R–70 pop-up sprinklers at the Pine Grove Complex. Accordingly, we find the trial judge properly granted summary judgment in favor of the Commission.

For the foregoing reasons, the decision of the trial judge is **AFFIRMED.**

CURETON, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge (dissenting).

I respectfully dissent.

The majority concludes there is no evidence of actual notice. A careful review of the record in totality reveals the erroneous decision of the majority.

### *SUMMARY JUDGMENT*

*Williams v. Chesterfield Lumber Co.,* 267 S.C. 607, 230 S.E.2d 447 (1976), elucidates:

Summary judgment can only be granted in those cases where plain, palpable and indisputable facts exist on which reasonable minds cannot differ. All ambiguities, conclu-

---

1. The Commission argues the affidavits submitted by the Strothers fail to meet the requirements of Rule 56(e), SCRCP. The Commission asserts the affidavits failed to set forth specific facts indicating the affiants were sufficiently familiar with the R–70 sprinkler system to allow them to comment on the problems of the system, and to render opinions as to what the maintenance workers should have known with respect to the sprinkler system. Based on the affiants' experience and familiarity with sprinkler systems, we find no abuse of discretion. *See Hoeffner v. The Citadel,* 311 S.C. 361, 429 S.E.2d 190 (1993) (A trial court's ruling on the admission of evidence will not be disturbed on appeal absent an abuse of discretion amounting to an error of law.)

sions and inferences arising in and from the evidence must be construed most strongly against the movant for summary judgment. *Title Insurance Company v. Christian,* 267 S.C. 71, 226 S.E.2d 240 (1976); *Eagle Construction Company, Inc., v. Richland Const. Company, Inc.,* 264 S.C. 71, 74, 212 S.E.2d 580 (1975).

*Id.* at 610, 230 S.E.2d at 448. *See also Hammond v. Scott,* 268 S.C. 137, 232 S.E.2d 336 (1977); *Gardner v. Campbell,* 257 S.C. 209, 184 S.E.2d 700 (1971).

In *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.,* 301 S.C. 418, 392 S.E.2d 460 (1990), our Supreme Court illuminates:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* S.C.R.C.P. 56(c) (1989). *LaMotte v. Punch Line of Columbia, Inc.,* 296 S.C. 66, 370 S.E.2d 711 (1988). *Crescent Company of Spartanburg, Inc. v. Insurance Company of North America,* [266 S.C. 598, 225 S.E.2d 656 (1976) ] supra.

The grant of summary judgment is appropriate only if it is clear that no genuine issue of material fact exists, that inquiry into the facts is not desirable to clarify the application of the law, and that the movant is entitled to judgment as a matter of law.

A party seeking summary judgment has the burden of clearly establishing by the record properly before the Court the absence of a triable issue of fact. *See Tom Jenkins Realty, Inc. v. Hilton,* 278 S.C. 624, 300 S.E.2d 594 (1983). All inferences from facts in the record must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Eagle Construction Co. v. Richland Construction Company, Inc.,* 264 S.C. 71, 212 S.E.2d 580 (1975). A party who fails to show the absence of a genuine issue of material fact is not entitled to summary judgment even though his adversary does not come forward

with opposing materials. *Title Insurance Co. of Minnesota v. Christian,* 267 S.C. 71, 226 S.E.2d 240 (1976).

*Id.* at 421–22, 392 S.E.2d at 462.

*Dowling v. Home Buyers Warranty Corporation, II,* 303 S.C. 295, 400 S.E.2d 143 (1991), articulates:

It is axiomatic summary judgment should not be granted unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.,* 301 S.C. 418, 392 S.E.2d 460 (1990); *Tom Jenkins Realty, Inc. v. Hilton,* 278 S.C. 624, 300 S.E.2d 594 (1983). Even if there is no dispute regarding the facts, summary judgment should be denied if there is a dispute as to the conclusions to be drawn therefrom. *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990).

*Id.* at 297–98, 400 S.E.2d at 145.

*Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991), addresses summary judgment:

In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried. *Spencer v. Miller,* 259 S.C. 453, 192 S.E.2d 863 (1972). If triable issues exist, those issues must go to the jury. *Id.* In making its determination, the court must view the evidence in the light most favorable to the party opposing the motion. *Id.* Summary judgment is proper where plain, palpable, and indisputable facts exist on which reasonable minds cannot differ. *Williams v. Chesterfield Lumber Co.,* 267 S.C. 607, 230 S.E.2d 447 (1976). Summary judgment is not appropriate where further inquiry into the facts is desirable to clarify the application of the law. *Abrams v. Wright,* 262 S.C. 141, 202 S.E.2d 859 (1974).

*Id.* at 405, 409 S.E.2d at 367–68.

The case of *Baughman, et al. v. American Tel. and Tel. Co., et al.,* 306 S.C. 101, 410 S.E.2d 537 (1991), expounds:

Since it is a drastic remedy, summary judgment "should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues." *Watson v. Southern Ry. Co.,* 420 F.Supp. 483, 486 (D.S.C.1975); *see*

*also Holloman v. McAllister,* 289 S.C. 183, 186, 345 S.E.2d 728, 729 (1986) ("an extreme remedy to be cautiously invoked"). This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery. *Id.* at 112, 410 S.E.2d at 543.

Heretofore, the Court of Appeals has issued several opinions resulting in inconsistency. The Court previously held the existence of a mere scintilla of evidence in support of the nonmoving party's position is not sufficient to overcome a motion for summary judgment. *See Pryor v. Northwest Apts., Ltd.,* 321 S.C. 524, 469 S.E.2d 630 (S.C.Ct.App.1996); *Bravis v. Dunbar,* 316 S.C. 263, 449 S.E.2d 495 (Ct.App.1994); *Thomas v. Waters,* 315 S.C. 524, 445 S.E.2d 659 (Ct.App.1994); *Dickert v. Metropolitan Life Ins. Co.,* 306 S.C. 311, 411 S.E.2d 672 (Ct.App.1991).

On the other hand, this Court has also stated that at the summary judgment stage of a proceeding, it is only necessary for the nonmoving party to submit a scintilla of evidence warranting determination by a jury for summary judgment to be denied. *See Hill v. York County Sheriff's Dep't,* 313 S.C. 303, 437 S.E.2d 179 (Ct.App.1993); *Anders v. South Carolina Farm Bureau Mut. Ins. Co.,* 307 S.C. 371, 415 S.E.2d 406 (Ct.App.1992).

In order to provide guidance to the Bench and Bar, I would hereby expressly overrule *Hill* and *Anders.* The statements contained in *Hill* and *Anders* to the effect of "it is only necessary ... to submit a scintilla of evidence ..." are erroneous.

### NOTICE

It is imperative to review the law of notice with specificity in the case *sub judice.* It is axiomatic the terminology in the case law has resulted in an amalgamation of terms such as "actual notice," "constructive notice," "express notice," and "implied notice."

In a simplistic analysis, the law recognizes a bifurcation of notice: (1) "actual notice," and (2) "constructive notice." Scholars and writers have divided "actual notice" into: (1) "express notice," which involves direct information, and (2)

"implied notice," which is notice inferred from facts available to the person charged with means of knowledge. In some cases, courts have classified "implied notice" as "constructive notice." Other jurisdictions refer to "implied actual notice." Basically, it is important to recognize that "constructive notice" is a legal inference, while "implied actual notice" is an inference of fact. The result is that the same factual record may be utilitarian to prove "constructive notice" or "implied actual notice." *See* 58 AM.JUR.2D *Notice* §§ 5–7 (1989).

## DEFINITIONS

### Actual Notice

*Ab initio*, the term "actual notice," is not restricted by its facial import. Rather, "actual notice" means that which is directly and personally given to the person to be notified and embraces those things that reasonably diligent inquiry and exercise of the information at hand would have disclosed. *Id.*

*Actual notice.* Actual notice has been defined as notice expressly and actually given, and brought home to the party directly. The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.

*Constructive notice.* Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.

*Express notice.* Express notice embraces not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated. *See also Actual notice, above.*

*Implied notice.* Implied notice is one of the varieties of actual notice (not constructive) and is distinguished from "express" actual notice. It is notice inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if the inquiry were followed up with due diligence, would lead him definitely to the knowledge of the main fact. "Implied notice" is a presumption of fact, relating to what one can learn by reasonable inquiry, and arises from actual notice of circumstances, and not from constructive notice. Or as otherwise defined, implied notice may be said to exist where the fact in question lies open to the knowledge of the party, so that the exercise of reasonable observation and watchfulness would not fall [sic] to apprise him of it, although no one has told him of it in so many words.

BLACK'S LAW DICTIONARY 1061–62 (6th ed. 1990).

### SOUTH CAROLINA PRECEDENT

In a plethora of scenarios, "notice" is analyzed in reference to its impact on a particular theory. "When a person knows of a thing he has 'notice' thereof, as no one needs notice of what he already knows." *Walker v. Preacher, et al.,* 185 S.C. 462, 467, 194 S.E. 868, 870 (1938).

Amplifying the use of "notice" as it relates to parties *inter sese* is *City of Greenville v. Washington American League Baseball Club, et al.,* 205 S.C. 495, 509, 32 S.E.2d 777, 782 (1945): "Furthermore, if there are circumstances sufficient to put the party upon inquiry, he is held to have notice of everything which that inquiry, properly conducted, would certainly disclose."

A commonsensical statement in regard to "notice" is contained in *Hannah v. United Refrigerated Servs., Inc.,* 312 S.C. 42, 430 S.E.2d 539 (Ct.App.1993):

Stated differently, "[n]o one needs notice of what he already knows." *Id.; Dicks & Gillam, Inc. v. Cleland,* 295 S.C. 124,

128, 367 S.E.2d 430, 433 (Ct.App.1988). "Actual notice is synonymous with knowledge." *Jefferson County Bank v. Erickson,* 188 Minn. 354, 247 N.W. 245, 247 (1933).

*Id.* at 47, 430 S.E.2d at 542.

*Williams v. Jefferson Standard Life Ins. Co., et al.,* 187 S.C. 103, 196 S.E. 519 (1938), explicates "constructive notice":

Constructive notice is thus defined in Black's Law Dictionary, 3d Ed., p. 1258: "Constructive notice is a presumption of law making it impossible for one to deny the matter covering which notice is given."

"Constructive notice is a legal inference from established facts, and like other legal presumptions does not admit of dispute. It is in its nature no more than evidence of notice, the presumption of which is so violent that the Courts will not even allow its being controverted." 20 R.C.L. 340.

It will not be argued that this arbitrary rule of constructive notice, founded on presumption, should be enforced against one who is in complete ignorance of the facts from which the presumption arises.

"Constructive notice, strictly speaking, is ineffective unless there is a statute providing therefor." 20 R.C.L. 342.

As we have said, we know of no statute which gives to the records of the court of probate the effect of constructive notice. Usually those who invoke the power of the probate court to adjudge one insane seek to shun publicity thereabout.

"In some cases it has been said that constructive notice is a creature of 'positive law' or a 'creature of the statute,' ineffectual unless provided by statute, and that, to be of any force, the statute must be strictly complied with."

" * * * Constructive notice rests on a strictly legal presumption and may be a creature of positive law. The same facts sometimes may be such as to prove both constructive and actual notice, that is, a court may infer constructive notice and a jury may infer actual notice from the facts. There may be cases when the facts show actual, when they do not warrant the inference of constructive notice." 46 C.J. 541.

It seems plain that one cannot be held to have constructive notice of facts from which the presumption of notice

arises, who is wholly ignorant of those facts, and a knowledge of which is the necessary influence of his conduct, or actions in the premises.

*Id.* at 114–15, 196 S.E. at 524.

The equivalency of "actual notice" is articulated in a dissent penned in *Government Employees Ins. Co. v. Chavis, et al.,* 254 S.C. 507, 525, 176 S.E.2d 131, 140 (1970): "It is settled law that knowledge of facts sufficient to put a reasonable man on inquiry is equivalent to actual notice of such facts as a reasonably diligent inquiry would certainly have disclosed."

Additionally, the Court of Appeals recognized an expansion of the strict definition of "actual notice" in *Fuller–Ahrens Partnership v. South Carolina Dep't of Highways and Pub. Transp., et al.,* 311 S.C. 177, 427 S.E.2d 920 (Ct.App.1993): " 'Actual notice may be inferred from circumstances. That which puts a party upon inquiry may be the equivalent of actual notice.' " *Id.* at 185, 427 S.E.2d at 924 (quoting *Patellis v. Tanner,* 197 Ga. 471, 29 S.E.2d 419, 424 (Ct.App.1944)).

In contrariety to the conclusion of the majority that there is no evidence of "actual notice" in this record, I conclude that the affidavits and information submitted by the plaintiff are sufficient to meet a summary judgment analysis in connection with the law of "actual notice." This case falls within the ambit of "implied actual notice" by definition. I believe that South Carolina would follow a majority of jurisdictions in recognizing "implied actual notice" as a definition of "actual notice."

For the foregoing reasons, I would reverse the order of the trial court granting summary judgment to the defendant.